**UNITED STATES of America**

v.

**Samuel QUATTRONE, Jimmy Lubin, Guy N. Wilson, Arthur K. Kercoude.**

Cr. No. 502–56.

United States District Court for the District of Columbia.

Jan. 29, 1957.

Thomas Flannery, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Myron Ehrlich, Joseph Sitnick, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

█ The Court, *sua sponte*, has determined to disqualify itself from ruling upon the pending motion of the defendants in the case of United States v. Quattrone,[1] and from presiding over the trial of the case, and will enter an order to that effect. Having reached this decision with great reluctance, the Court believes that it is important that its reasons be explained.

Defendants were indicted on sixteen counts for violation of certain gambling statutes.[2] On January 4, 1957, the Court heard oral argument upon the motion of the defendants for the return of seized property and the suppression of evidence. At that time the Court took the motion under advisement and subsequently received memoranda from both parties concerning the legal issues involved. While the Court had the motion under advisement and was giving serious consideration to the difficult legal problems presented therein, the Court was visited in its chambers by an individual who is known personally to the

Court but who is not counsel of record in the case. The individual involved, after stating emphatically that he had neither an intention nor a desire to attempt to influence the Court, requested information concerning the expected date of the ruling and the probable date of trial. The discussion of the case was the sole subject of conversation during the visit. The Court was and is puzzled as to the purpose of the inquiries. The Court also does not understand why this individual should be interested in this particular case. However, the Court does not believe that any improper act was intended. In fact the Court's reluctance to disqualify itself results in part from its desire to avoid creating an impression that the individual was a party to a wrongful action. Nevertheless, in view of the particular individual's acquaintanceship with the Court, it might *appear* to others that an effort was made to influence the Court's judgment.

█ That the Court is not required to disqualify itself in this case is too clear to require discussion. This is not a case in which the authority of the Court to determine a particular issue is in question. The only issue is whether, under the circumstances surrounding this case, the Court should exercise its discretionary power to relinquish jurisdiction. In making this decision, the Court believes that it should consider not only whether what has happened would actually influence the Court, but whether it might give the appearance of so doing.

In these times in which the Judiciary has been recklessly attacked and its integrity wrongfully challenged, it is particularly important that the problem of voluntary disqualification be carefully considered. For the Court would be loath to give comfort to those who frivolously suggest disqualification of members of the Judiciary on the grounds of political or social prejudice. In such cases it seems clear that the integrity of the courts may best be preserved through a

1. Criminal No. 502-56.

2. Title 22 D.C.Code, §§ 1501, 1502, 1505, 1508; Title 26 U.S.Code, § 7262.

firm refusal to yield to its attackers. For voluntary disqualification under those circumstances would only serve the malicious purpose of the Court's detractors. In the present case, however, no comfort can result to any adversaries of the Judiciary as a result of voluntary disqualification.

■ As a general rule, voluntary disqualification is an appropriate remedy in cases in which it may reasonably appear that the determination of the issues by the judge concerned might be improper, even though the facts do not support such a supposition.[3] In this connection the Court has been much impressed with the following statement of Mr. Justice Frankfurter in an opinion explaining his failure to take part in the consideration and decision of a recent case: "When there is ground for believing that such unconscious feelings may operate in the ultimate judgment, *or may not unfairly lead others to believe they are operating,* judges recuse themselves. They do not sit in judgment. They do this for a variety of reasons. *The guiding consideration is that the administration of justice should reasonably appear to be disinterested* as well as be so in fact." (Emphasis added.) Public Utilities Commission v. Pollack, 1952, 343 U.S. 451, 72 S.Ct. 813, 818, 822, 96 L.Ed. 1068.

The Court does not believe that any general principles can be laid down concerning the degree to which an appearance of bias, interest, or improper motive must exist before voluntary disqualification becomes desirable in any particular case. The availability of other judges, the inconvenience or prejudice to the public or parties which may result from the delay, the importance of the issues involved in the case, the nature of the actions which give rise to the ap-

pearance of partiality, and many other factors all may be relevant. Furthermore, it would be presumptuous for this court to attempt to lay down any general test. For the decision as to voluntary disqualification, perhaps more than any other decision, is one to be made in accordance with the dictates of the conscience of the individual judge—and this Court's personal convictions can be of little assistance to others.

Concededly, in this case the appearance of judicial impropriety which would result from this Court's retention of jurisdiction would not be great. On the other hand, other judges are readily available, and the delay and inconvenience resulting from this Court's voluntary disqualification would be negligible. In balancing these factors the Court has taken into consideration the fact that confidence in the Judiciary is essential to the successful functioning of our democratic form of government. That form of government could not long survive if citizens could not have faith in the impartiality of judges. Though the making of this decision has been a most unpleasant task, the Court believes that a proper application of the standards governing the administration of criminal justice leaves no alternative. For those standards require the most scrupulous concern for appearances as well as for facts. In this regard the Court believes the following statement to be particularly pertinent: "Criminal justice is concerned with the pathology of the body politic. In administering the criminal law, judges wield the most awesome surgical instruments of society. A criminal trial, it has well been said, should have the atmosphere of the operating room. The presiding judge determines the atmosphere. He is not an umpire who enforces the rules of the game, or merely a moderator between contestants. If he is adequate

---

3. "We can well understand the reluctance with which a District Judge would put himself in a position which seemed to be a shifting to another of this sometimes very burdensome and very delicate duty; but it is of the greatest importance that contempt proceedings be put, as far as possible, *beyond the reach of even unjust adverse criticism* * * *." (Emphasis added.) Toledo Newspaper v. United States, 1916, 6 Cir., 237 F. 986, 988, 150 C.C.A. 636; Clyma v. Kennedy, 1894, 64 Conn. 310, 29 A. 539, 42 Am.St. Rep. 194.

to his functions, the moral authority which he radiates will inspire the indispensable standards of dignity and austerity upon those who participate in a criminal trial." [4]

In view of the appearance of impropriety, in view of the minimal inconvenience which would result from the assignment of another judge to this case and in view of the rigid standards which must govern the administration of criminal justice, the Court is of the firm belief that it must voluntarily disqualify itself from any further proceedings in this case. Accordingly, the motion will be reassigned for argument before another judge.

---

4. Sacher v. United States, 1952, 343 U.S. 1, 72 S.Ct. 451, 469, 96 L.Ed. 717. Dissenting opinion.