**SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, et al.,**

v.

**STATE OF MISSOURI et al.**

**No. 77–0420–CV–W–1.**

United States District Court, W. D. Missouri, W. D.

Oct. 4, 1977.

James R. Borthwick, Taylor Fields, Kansas City, Mo., Robert E. Manley, Cincinnati, Ohio, for plaintiffs.

Timothy H. Bosler, Liberty, Mo., Lawrence R. Brown, Kansas City, Mo., Rufus B.

Burrus, Independence, Mo., Harry D. Dingman, Kansas City, Mo., Elvin S. Douglas, Jr., Harrisonville, Mo., Donald C. Earnshaw, Lee's Summit, Mo., Hollis H. Hanover, Lonnie J. Shalton, Jack W. R. Headley, Kansas City, Mo., Charles N. Henson, Topeka, Kan., Ronald G. Hinkle, Olathe, Kan., Norman Humphrey, Independence, Mo., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, Mo., Hugh H. Kreamer, Olathe, Kan., James P. Lugar, Kansas City, Kan., James H. McLarney, Kansas City, Mo., Julius M. Oswald, Blue Springs, Mo., P. John Owen, Kansas City, Mo., Willard L. Phillips, Kansas City, Kan., Scott A. Raisher, Missouri Asst. Atty. Gen., Kansas City, Mo., Eugene B. Ralston, Topeka, Kan., Edward E. Schmidt, Joseph A. Sherman, William W. Shinn, William L. Turner, Kansas City, Mo., John L. Vratil, Shawnee Mission, Kan., Richard H. Zehring, Asst. U. S. Atty., Kansas City, Mo., for defendants.

### MEMORANDUM AND ORDERS IN REGARD TO MOTION TO DISQUALIFY

JOHN W. OLIVER, Chief Judge.

#### I.

This school desegregation action is a case of first impression. In essence, plaintiffs seek to create by federal court order a Greater Kansas City metropolitan school district, with jurisdiction over Missouri and Kansas children in several school districts in each of those States, presumably to be run by this federal court.

In the Western District of Missouri standard procedures require that new cases be assigned randomly to one of the four active judges. After the case was assigned to me, counsel for the many parties involved began the paperwork which attends the birth of any major case. By early September, numerous motions were ripe for ruling and therefore were brought to my attention by the Clerk's office.

After review of the various motions and in accordance with standard procedures in all complex cases, I entered an order on

September 6, 1977, setting this case for a pretrial conference on September 21, 1977. The purpose of that conference was to sort out the various motions and establish agreed procedures which would guarantee the prompt decision of substantial threshold questions by this Court. Thereafter, the parties would have been able to take a speedy and inexpensive interlocutory appeal to the Court of Appeals.

The filing by some defendants of the pending statutory motion to disqualify me from sitting as the trial judge in this case had the effect of bringing the orderly processing of this case to a temporary standstill.

Although various of the pending motions to dismiss are based upon several grounds which all parties agree do not require the presiding judge to rule or determine any disputed evidentiary facts, I reiterate the view expressed at the September 21, 1977, pretrial conference that the pending statutory motion to disqualify, filed September 19, 1977, should be given priority attention. For reasons I shall state, defendants' statutory motion to disqualify will be denied. An order will also be entered by me as Chief Judge, on my own motion, transferring this case to the Honorable Russell G. Clark, presiding judge of Division III, for all further proceedings.

## II.

Defendants' statutory motion to disqualify is based solely upon 28 U.S.C. §§ 455(a) and 455(b)(1). Section 455(a) provides that a judge shall disqualify himself in any proceeding in which "his impartiality might reasonably be · questioned." Section 455(b)(1) provides that a judge also shall disqualify himself where he has "personal knowledge of disputed evidentiary facts concerning the proceeding."

Defendants allege only three factual grounds to support their motion. Defendants allege (1) that prior to my appointment to this Court by President Kennedy in 1962, I was an active and practicing member of the predecessor law firm which presently represents the plaintiffs in this case; (2) that as a member of that law firm I "advised, counseled, and represented the School District of Kansas City, Missouri, one of the plaintiffs in this cause, during the period of time alleged to be relevant"; and (3) that "as attorney for the School District of Kansas City, Missouri, the Honorable John W. Oliver would have participated in or been personally aware of actions taken or not taken by that district and the defendants in this lawsuit which will serve as the basis both for some of plaintiffs' claims and defendants' defenses in this cause."

It is important to note at the outset what is *not* presented by defendants' statutory motion to disqualify. Defendants' statutory motion is *not* based on 28 U.S.C. § 144, which permits a party to disqualify a judge on the basis of "personal bias or prejudice either against him or in favor of any adverse party." [1] Nor do the defendants attempt to rely upon that portion of Section 455(b)(1) which provides that a judge should disqualify himself "where he has a personal bias or prejudice concerning a party."

Had any of the numerous moving defendants elected to base their statutory motion to disqualify on any alleged ground that I in fact have "a personal bias or prejudice against him or in favor of any adverse party," within the meaning of Section 144, or that I in fact have "a personal bias or prejudice concerning [any] party" in the case, within the meaning of Section

---

1. Section 144 provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

455(b)(1), such a party would have been required on pain of perjury to file a timely and sufficient affidavit setting forth "the facts and the reasons for the belief that bias or prejudice exists."

In addition, counsel for such a party would have been required to file a certificate that the affidavit of the party had been made in good faith. It is clear that "28 U.S.C. § 455 is no substitute for the mandatory requirements of 28 U.S.C. § 144 with respect to a motion to disqualify a judge," *Town of East Haven v. Eastern Airlines, Inc.*, 304 F.Supp. 1223, 1225 (D.Conn.1969) (Timbers, C. J.). In other words, if anyone really believed that I have any bias or prejudice for or against any party in this case, the statutes provided an appropriate procedure to make such a charge.

Although the suggestions in support of the motion vaguely refer to "questions [which] have been raised by members of school boards and their constituents," it is clear that not one of the moving defendants attempted to present in the manner required by law any allegation that I in fact have any bias or prejudice for or against any party to this litigation. Any question of bias or prejudice simply is *not* presented in this case.

It is possible, if not probable, that some of the unidentified members of the school boards and their unidentified constituents may be quite surprised to learn that counsel did not base their statutory motion to disqualify on any alleged bias and prejudice of the judge who drew this case. It is clear from both the suggestions in support of the motion and some of the statements made by some counsel at the September 21, 1977, pretrial conference that the heat, gossip, and controversy always engendered by the mere filing of any sort of desegregation case apparently was transmitted from the unidentified "members of the school boards and their constituents" to counsel, who in turn felt "compelled" to file the pending statutory motion to disqualify.

What we have said, of course, does no more than say what questions are *not* presented by the pending motion. The fact that no question of bias and prejudice is presented in this case, does not, however, relieve me of the duty to consider whether the three grounds alleged in the motion are sufficient in fact and in law to support defendants' statutory motion to disqualify.

■ It is irrational to believe that my impartiality might *reasonably* be questioned within the meaning of Section 455(a) by the fact that my old law firm represents the plaintiff and by the fact I advised, counseled, and represented the School District of Kansas City, Missouri, over fifteen years ago. Every lawyer from my old firm who is active in this case joined that firm long after I was appointed to the bench. Most of the members of the school board who served the School District during the time I was a practicing lawyer are either dead or long out of office. I can hardly count the number of different superintendents who have served the School District of Kansas City since I have been on the bench, many of whom I never personally met.

Moreover, this is not the first time I have sat impartially in a case involving both the school board and my own firm. Seven years ago, with the consent of all parties and their counsel, I sat in *Brenner v. School District of Kansas City, Missouri*, 315 F.Supp. 627 (W.D.Mo.1970), affirmed by the Supreme Court of the United States in 403 U.S. 913, 91 S.Ct. 2225, 29 L.Ed.2d 692 (1971). That case, under the applicable law, required a decision against both my old law firm and the school district.

■ A different question is presented by defendants' allegation that as a practicing lawyer I necessarily "would have participated in or been personally aware of actions taken or not taken by [the School District of Kansas City, Missouri] and the defendants in this lawsuit which will serve as the basis both for some of plaintiffs' claims and defendants' defenses in this case." Defendants contend that I must disqualify myself under both Section 455(a) and Section 455(b)(1) because I may have "personal knowledge of disputed evidentiary facts

concerning the proceeding" within the meaning of Section 455(b)(1).

That suggestion was made to this Court on September 19, 1977, in defendants' motion to disqualify and suggestions in support. On September 20, 1977, however, counsel for all the moving defendants took a completely inconsistent position. For example, counsel representing the Missouri school districts stated in a written response filed September 20, 1977, that "[i]t is readily apparent from even a cursory review of plaintiffs' 'Outline' that no additional facts are needed to rule on the motions to dismiss."

Indeed, the Missouri school district defendants advised me in writing on September 20, 1977, that plaintiffs' requests for discovery should be denied because no additional factual data needed to be before the Court for it to rule the motions to dismiss. Defendants went so far as to accuse plaintiffs of attempting "to embroil the Court and the parties in an unwise expenditure of time and money prior to a determination of the threshold issues raised by defendants' motions which would terminate this case" without any evidentiary hearing whatever. Other defendants who joined in the motion to disqualify took similarly inconsistent positions in regard to whether it may ever be necessary for the judge presiding over this case to decide *any* "disputed evidentiary facts concerning the proceeding" within the meaning of Section 455(b)(1).

It is therefore apparent that the most recent statement of counsel for the defendants who filed the motion to disqualify reflects that such counsel, within twenty-four hours, completely abandoned any idea that it was inevitable that a judge of this Court would ever be required to resolve any factual dispute as to any relevant and material evidence about which he may have acquired some personal knowledge between the years of 1954 and 1962. Moreover, I have assured counsel repeatedly that I would recuse myself immediately should my personal knowledge of facts ever become relevant.

We need go no further in considering the statutory motion to disqualify than to find

and conclude that the defendants have not carried the burden of establishing sufficient grounds for statutory disqualification under either Section 455(a) or Section 455(b)(1). But, as I attempted to make clear in open court at the September 21, 1977, pretrial conference, a denial of a particular party's statutory motion to disqualify is not decisive of whether a judge should continue to sit in a pending case.

We shall more fully develop our view of how a judge must exercise his judicial discretion in regard to recusement on his own motion in the next part of this memorandum opinion.

### III.

Several weeks before the statutory motion to disqualify was filed in this case, I decided, on my own motion, to recuse in *United States v. Armco Steel Corporation, et al.*, No. 77–00094–CR–W–1. In concluding that I should not sit in that case I followed my consistent practice for over fifteen years of stating the principles of law to be applied and how I believed those principles should be applied to the particular factual circumstances in the case then under consideration in the following language:

> The statutory requirement stated in Section 455(a), Title 28, United States Code, that a judge "shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned" has been broadened by the additional requirements contained in the Code of Judicial Conduct for United States Judges, adopted by the Judicial Conference of the United States at its April and September, 1973, meetings. Canon 2 of that Code requires that a judge not only avoid impropriety in regard to the conduct of his duties but that he should avoid even the appearance of impropriety in the conduct of his office.

Because this is only the second instance in which I have been required to consider a statutory motion to disqualify since I have been on the bench, I believe it important to

state the reasons why I have decided on my own motion to assign this case to another judge.[2]

It is my view that the duty to recuse stated in the Code of Judicial Conduct, which was developed by the Judicial Conference of the United States, establishes a higher standard than that imposed by any of the various statutes passed by the Congress. It is clear to me that in some exceptional cases a judge may be under duty to deny a motion to disqualify based on statutory grounds but that, consistently with the higher standard enunciated in the Code of Judicial Conduct, he should nevertheless take himself out of the case.

Canon 2 of the Code of Judicial Conduct codifies the delicate and difficult duty of a judge to conclude whether his decision to sit may reasonably present even an appearance of impropriety. That duty is a judicially imposed duty and has as its source principles and experience which are quite independent of duties which may be imposed by legislative action. Indeed, the Congress passed its first disqualification statute in 1911. Until that time, the standards for recusement were established solely by the judicial branch of our government.

Mr. Justice Frankfurter's statement of his reasons for refusing to sit in *Public Utilities Commission v. Pollak*, 343 U.S. 451, 466, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), has been the most helpful judicial statement assisting me to determine, over the years, whether I should or should not sit in a particular case. Mr. Justice Frankfurter recused in that case and expressed his view, with which I agree, that "it is desirable to state why one takes himself out of a case." This is what he said in that case:

The judicial process demands that a judge move within the framework of relevant legal rules and the covenanted modes of thought for ascertaining them. He must think dispassionately and submerge private feeling on every aspect of a case. . . . This is achieved through training, professional habits, self-discipline and that fortunate alchemy by which men are loyal to the obligation with which they are entrusted. . . . *The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact.* [343 U.S. at 466–67, 72 S.Ct. at 822–23; emphasis added]

*United States v. Quattrone*, 149 F.Supp. 240 (D.D.C.1957), reflects the view of another judge who agreed with Mr. Justice Frankfurter's statement. Judge Youngdahl, the trial judge in that case, stated:

The Court does not believe that any general principles can be laid down concerning the degree to which an appearance of bias, interest, or improper motive must exist before voluntary disqualification becomes desirable in any particular case. The availability of other judges, the inconvenience or prejudice to the public or parties which may result from the delay, the importance of the issues involved in the case, the nature of the actions which give rise to the appearance of partiality, and many other factors all may be relevant.

---

2. I should note that I agree with what was said by former Chief Judge, now Senior Judge, Becker in *Deal v. Warner*, 369 F.Supp. 174 (W.D.Mo.1973), and *United States v. Civella*, 416 F.Supp. 676 (W.D.Mo.1975), in regard to statutory disqualifications.

In addition, while I do believe that the 1974 amendment of Section 455(a) was intended to and did broaden the statutory grounds for disqualification, I do not believe that all case law developed in connection with other disqualification statutes which have neither been repealed or amended somehow has been taken off the books by the 1974 amendment of Section 455(a).

The grounds for statutory disqualification of a federal judge have, of course, changed substantially since I was admitted to the Bar over forty years ago. In those days lawyers who wanted to try to disqualify a federal judge were, in some districts, advised to write out their motion to disqualify on the back of their license to practice law.

Mr. Justice Rehnquist's *nunc pro tunc* memorandum, published in *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), in which he stated his reasons for refusing to take himself out of that case, shows that times have changed somewhat in the intervening years. I agree generally with that statement.

In addition, Judge Youngdahl properly said that the judge must also take into consideration

the fact that confidence in the Judiciary is essential to the successful functioning of our democratic form of government. That form of government could not long survive if citizens could not have faith in the impartiality of judges. [149 F.Supp. at 242][3]

■ *Kelley v. Metropolitan County Board of Education of Nashville,* 479 F.2d 810 (6th Cir. 1973), also involved a school desegregation case. Judge Morton, the trial judge, recused on his own motion after concluding that there was no valid statutory ground for disqualification. His *sua sponte* order of disqualification was affirmed by the Court of Appeals for the Sixth Circuit in a short per curiam order. Judge McCree's concurring opinion reflects my view of the applicable law. Judge McCree stated at the outset:

A judge, although perhaps not legally disqualified under 28 U.S.C. §§ 144, 455, should recuse himself if he knows of some reason why he should not sit, and in such a case should state the basis for his decision. If there is no reason other than his disinclination to hear a matter, he should not be permitted to step aside merely to avoid an unpleasant or onerous task. A litigant is entitled to have a judge to whom a matter is assigned in due course hear and dispose of that matter if there is no reason to disqualify him or otherwise

to make him unavailable. [479 F.2d at 811–12]

Judge McCree noted that "the record in this case disclosed an atmosphere of hostility and suspicion," and that "since the beginning of this litigation, the parties have been able to agree upon virtually nothing." 479 F.2d at 812. Judge Morton, noting the efforts of some of the parties "to marshal public opinion," determined that he should, on his own motion, take "the drastic step of disqualifying himself." In doing so, he said:

The quality of justice cannot be dependent upon the identity of a particular individual who sits on a particular Court at a particular time. A general uniformity of justice is effected by the nature and structure of our judicial system. It is the process, not the particular person, which determine the justice applied in our society. [*Id.* at 812–13]

Judge Morton stated the quite practical hope that "[p]erhaps changing Judges can operate as it sometimes appears when baseball clubs change managers—maybe emotions can be calmed so intelligence can have an opportunity." *Id.* at 813.

After giving the motion the most careful consideration, we are convinced that the circumstances of this case require that, on our own motion, we immediately transfer this case to another judge so that every possible obstacle to the orderly and expeditious processing of this case can be removed.

**3.** In still another portion of his opinion in *Quattrone,* Judge Youngdahl stated the problem which cuts across all cases in which questions of disqualification are presented either by a party's statutory motion or by the judge's own evaluation of his judicial duty:

In these times in which the Judiciary has been recklessly attacked and its integrity wrongfully challenged, it is particularly important that the problem of voluntary disqualification be carefully considered. For the Court would be loath to give comfort to those who frivolously suggest disqualification of members of the Judiciary on the grounds of political or social prejudice. In such cases it seems clear that the integrity of the courts may best be preserved through a firm refusal to yield to its attackers. For

voluntary disqualification under those circumstances would only serve the malicious purpose of the Court's detractors.

Forty years ago, Judge Otis of this Court dealt with the same problem in more colorful language in *United States v. Buck,* 18 F.Supp. 827 (W.D.Mo.1937), in a case in which he refused to recuse. He said:

I think there is no merit whatever in these affidavits. Thinking that, I will not voluntarily desert the post at which I have been put. Certainly it will take more to induce me to quit it than affidavits patterned on that well-known modernization of an ancient epigram:
'I do not like thee, Dr. Fell,
The reason why I cannot tell
But this I know, I know full well,
I do not like thee, Dr. Fell.'

## IV.

■ Consistent with the principles of law above stated, we find and conclude that, in the exercise of our judicial discretion, we should enter an order transferring this case to another judge of this Court for all further proceedings. We have balanced the following factors in reaching that conclusion.

1. Experience establishes that the processing of a multi-party case requires a high degree of cooperation between counsel and the Court. This is particularly true in a case the very nature of which is calculated to produce controversy and uninformed emotional reaction. The views expressed at the September 21, 1977, pretrial conference and the apparent control which some of the parties apparently exercise over their respective counsel support my experienced judgment that the necessary degree of cooperation is not likely to be attained if I continue to sit in this case. This is particularly true of counsel who have never appeared before in any case during the time I have served this Court.

On September 6, 1977, this Court stated of record, long before any motion to disqualify was ever filed, that the files and records in this case up to that time made it "clear that counsel for all parties have elected to proceed at arms length with the result that a mountain of unproductive paperwork already has accumulated in connection with this case." I stated with some degree of bluntness that I did not share plaintiffs' view that "final determination of all the issues raised by the motions may be measured in years rather than months." Some of the statements made by some counsel for some of the parties suggest that they may not be particularly unhappy with plaintiffs' estimate of how long this case may be in litigation.

We suggested in our opinion of September 6, 1977, but did not order, that counsel for the various defendants confer and consider agreeing upon the designation of a small committee of defense counsel who could serve as liaison counsel for all defense lawyers who appear of record.

The orders entered on September 6, 1977, sought the necessary cooperation of counsel in an effort to isolate what may be controlling questions of law which could be decided on an undisputed factual record and which could, after decision in this Court, be certified for decision by the Court of Appeals for the Eighth Circuit under the provisions for interlocutory appeal in 28 U.S.C. § 1292(b). Consistent with that effort, counsel for plaintiffs were expressly ordered to state all factual data which they believed should be in the record in separately number sentences so that defendants would be able to respond in a manner which would eliminate any factual dispute under the circumstances.

The files and records show that counsel for plaintiffs only partially complied to this Court's order of September 6, 1977, and that counsel for the defendants were not able to agree upon an appropriate liaison committee. While the partial performance by counsel for all parties was not so deficient as to be beyond cure in an ordinary case, it must be recognized that any desegregation case is not an ordinary case. The reluctance of counsel to do anything toward improving the atmosphere for cooperation was, in my judgment, conclusively demonstrated at the September 21, 1977, pretrial conference. The pressing need for cooperation is not going to go away. It is my considered judgment that a change of judge may enable counsel to make a fresh start with a full commitment that they, rather than their clients, are responsible for the orderly processing of this case.

2. The demonstrated willingness of counsel to feel "compelled" to file the statutory motion to disqualify, with apparently careful selection of statutory grounds which obviated the mandatory filing of an affidavit by a party in which such party would be required to "state the facts and reasons for the belief that bias and prejudice exist," suggests that counsel for some of the defendants do not believe it possible to explain to some school board members and their constituents that the unidentified questions in their minds did not support

their apparent fear that the judge to whom the case was assigned would violate his oath of office.[4] We are satisfied that it would be virtually impossible for some counsel to explain to some clients the denial of their statutory motion to disqualify.

3. We are convinced that the completely inconsistent position which the moving defendants have taken in regard to the question presented under Section 455(b)(1) makes it reasonably probable that rumors and gossip will circulate in the community that the judge trying the case is going to determine disputed questions of fact concerning matters which occurred while he was counsel for the Kansas City School District. I do not believe that the fact that I stated in open court that I would not do so under any circumstances could adequately be communicated to persons who would choose to believe otherwise regardless of what advice they may get from counsel. Indeed, I do not believe that counsel would be able to explain that if I ever determined facts of which I have personal knowledge, the defendants would have a sure ground for reversal on appeal. *See In re Rodgers*, 537 F.2d 1196 (4th Cir. 1976). I am reasonably satisfied that at least some of the unidentified school board members and some of their unidentified constituents would view any advice from counsel as "legal mumbo-jumbo."

4. The nature of the pending action requires that any doubt about the appearance of any possible impropriety should be resolved in favor of recusal on my own motion. Counsel for all parties properly recognize that desegregation cases are not ordinary cases.

This Court indicated its concern in regard to the possibilities of unwarranted expense and delay long before any statutory motion to disqualify was filed. We are now concerned that a possible appeal or mandamus action flowing from my continued participation in this case could result in further delay and expense to the parties.[5]

5. While the availability of other judges to try the case is not a controlling circumstance, see *Wolfson v. Palmieri*, 396 F.2d 121, 125 (2nd Cir. 1968), the fact that other qualified judges are available must be given appropriate consideration.

6. Finally, we believe that the overriding consideration is whether every possible ground for the appearance of impropriety should be removed by transfer to a judge of this Court most completely removed from any sort of charge that he may have some predeliction in the manner in which the case is to be processed and decided. We return in the final analysis to the wisdom of Mr. Justice Frankfurter's comment that "the guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact."

After concluding that I should step aside on my own motion, I consulted with all of the active judges of this Court in regard to how the case should be transferred. All agreed that I should exercise the power vested in me as Chief Judge under 28 U.S.C. § 137, and expressed confidence that I would make the assignment to the judge who would be the least likely to have any possible apparent connection with the pending litigation. The obvious choice is the Honorable Russell G. Clark, who until recently was a resident of Springfield, Mis-

4. 28 U.S.C. § 453 provides that "each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: 'I, _____ _____, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____ according to the best of my abilities and understanding, agreeably to the Constitution and laws of the United States. So help me God.' "

5. See *United States v. Gilboy*, 166 F.Supp. 220 (M.D.Pa.1958), in which Chief Judge Murphy deemed it appropriate to step aside *sua sponte* in a case in which his denial of a statutory motion to disqualify had been approved by the Court of Appeals for the Third Circuit because of the delay incident to defendants' desire to petition the Supreme Court of the United States for writ of *certiorari*.

souri. After making that determination in my own mind, and after further consultation with my Brethren, I consulted Judge Clark and he is agreeable to the assignment.

For the reasons above stated, it is

ORDERED (1) that the pending statutory motion to disqualify should be and the same hereby is denied. It is further

ORDERED (2) that in light of the undersigned judge's determination that he should recuse on his own motion in this case for the reasons above stated, the Clerk's office is directed to set aside the original random assignment of this case to Division 1. It is further

ORDERED (3) that with the approval of all active judges of this Court, and acting pursuant to the power vested in the Chief Judge of this District under 28 U.S.C. § 137, this case should be and hereby is transferred for all further proceedings to Division 3 of this Court, the presiding judge of which is the Honorable Russell G. Clark.