Susan ROSENBERG, Plaintiff,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and John Wyllys, Defendants.**

Civ. Action No. 96–12267–NG.

United States District Court, D. Massachusetts.

Sept. 3, 1997.

Steven T. Sager, Marc Redlich, Law Offices of Marc Redlich, Boston, MA, Richard P. Goodkin, Framingham, MA, for Susan M. Rosenberg.

Barry Y. Weiner, Christopher P. Litterio, Sharpiro, Israel & Weiner, P.C., Boston, MA, for Merrill Lynch, Pierce Fenner & Smith, Inc., John Wyllys.

Robert J. Gregory, Washington, DC, for E.E.O.C.

Robert S. Mantell, Law Office of Kevin G. Powers, Boston, MA, for Massachussetts Branch of Nat. Employment Lawyers Ass'n.

Ozell Hudson, Jr., Lawyers' Committee for Civil Rights, Boston, MA, for Lawyer's Committee for Civil Rights.

Sydelle Pittas, Law Office of Sydelle Pittas, Winchester, MA, for Women's Bar Ass'n.

Sally Dunaway, American Associations of Retired Persons, Washington, DC, for American Ass'n of Retired Persons.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

## I. INTRODUCTION

The defendant Merrill Lynch ("Merrill Lynch") has filed a motion to recuse and vacate my April 23, 1997, order. I find that the motion has little merit and it is **DENIED**.

The defendant's motion stems from the fact that, over six years ago, in 1990, in my capacity as a private attorney, I represented a woman suing Merrill Lynch based on events which had occurred thirteen years prior to the litigation. My client in that case, Theresa Contardo ("Contardo"), had alleged disparate treatment—relating specifically to compensation—and constructive discharge based on her sex. Though Contardo recovered no compensatory damages, Judge Walter Skinner ordered Merrill Lynch to pay $250,000 in punitive damages. *Contardo v. Merrill Lynch, Pierce, Fenner & Smith*, 753 F.Supp. 406 (D.Mass.1990). Plaintiff Susan Rosenberg ("Rosenberg") has opposed the motion to recuse.

After a hearing and full briefing of all the issues, I deny the motion for a number of reasons. First, it was brought not at the outset of the litigation but rather six months into it, and indeed, one month after the Court had not only held a hearing on Merrill Lynch's motion to compel arbitration, but also after the Court had issued a ruling preliminarily denying that motion until further briefing could be had on certain substantial issues.

Notwithstanding the timing of the motion, I do believe that a motion for recusal is a serious matter and requires the Court to conduct a searching inquiry into the surrounding circumstances. Accordingly, I will begin this discussion with the merits of Merrill Lynch's claim.

## II. DISCUSSION

There are two potential grounds for recusal, according to the defendant: (a) the appearance of partiality and (b) the existence of partiality in fact. When all the facts are carefully considered, I find that the motion does not meet either ground.

### A. The Appearance of Impartiality

28 U.S.C. § 455(a) provides that any judge should disqualify herself from any proceeding in which "her impartiality might *reasonably* be questioned." (emphasis added).[1] In the First Circuit, "[t]he recusal regimen under 28 U.S.C. § 455(a) ... requires the presiding judge to determine whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality ... in the mind of the reasonable person." *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F.3d 136, 140 n. 3 (1st Cir.1994) (citations omitted).

The *El Fenix* Court went on to state that the test under § 455(a) is whether the reasonable person, " 'were he to know all of the circumstances, would harbor doubts about the judge's impartiality.' " *Id.* at 140 (citing *Home Placement Serv., Inc. v. Providence Journal Co.*, 739 F.2d 671, 675 (1st Cir.1984)). This is not simply a rough measure of impartiality, i.e., do the circumstances appear at first glance or on a cursory review to require recusal. Plainly, that standard would be far too broad; all judges had full professional lives—as prosecutors, as corpo-

---

1. This is in contrast to § 455(b), which *requires* recusal when a judge has a personal bias or prejudice against one of the parties.

rate lawyers, as civil rights lawyers—before they were appointed to the bench; all represented a potpourri of clients. *See El Fenix,* 36 F.3d at 141 ("Were less required, a judge could abdicate in difficult cases at the mere sound of controversy, or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias."). Instead, the standard requires that the court consider the audience—"the reasonable person"—as individuals tutored in the facts, "knowing all the circumstances."

■ There is no presumption in favor of recusal when a motion has been filed. Indeed, "[a] trial judge must hear cases unless some reasonable factual basis to doubt the impartiality of the tribunal is shown by some kind of probative evidence." *Blizard v. Frechette,* 601 F.2d 1217, 1221 (1st Cir.1979) (emphasis added).

### 1. *No Per Se Disqualification*

■ There is no automatic disqualification in a case where a judge has previously represented an individual who filed suit against one of the parties. *See United States v. Hurst,* 951 F.2d 1490, 1503 (6th Cir.1991) (holding recusal not required where trial judge, as a private attorney years earlier, had filed a lawsuit against a defendant), *cert. denied,* 504 U.S. 915, 112 S.Ct. 1952, 118 L.Ed.2d 556 (1992); *Cipollone v. Liggett Group, Inc.,* 802 F.2d 658, 659 (3d Cir.1986) (refusing to vacate panel decision where a panel judge had once represented a tobacco company which was not a party to the lawsuit; even if the particular tobacco company had been a party, the long passage of time since the judge's representation would eliminate any perceived impartiality), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987). Far from an automatic recusal, the standard obliges me to scrutinize all the circumstances.

### 2. *The Circumstances in this Case*

■ First, the timing: The *Contardo* lawsuit focused on compensation and constructive discharge claims involving events in 1984, thirteen years ago, and years immediately preceding 1984. To provide context to her charges, the lawsuit raised Contardo's work history with Merrill Lynch, which began in 1972.[2] In contrast, Rosenberg did not even begin working for Merrill Lynch until 1992, long after the events at issue in the *Contardo* case had passed.

Second, the setting: The *Contardo* case involved the Boston office of Merrill Lynch, and the individuals making decisions within that office. It concerned Contardo's employment as a stockbroker. Rosenberg, however, worked in the Wellesley office of Merrill Lynch. The decisionmakers in her case were individuals in that office. She worked for Merrill Lynch as a financial consultant, not a stockbroker.

Third, the legal claim: The *Contardo* case involved the plaintiff's compensation as a stockbroker in the years immediately preceding and including 1984, compared to that earned by her male coworkers. In addition, since Contardo resigned from Merrill Lynch in 1984, the lawsuit concerned whether the circumstances surrounding her treatment met the legal standards for constructive discharge. The Rosenberg case, on the other hand, concerns age and gender discrimination, as well as sexual harassment. It focuses on the facts surrounding Rosenberg's performance as a financial consultant between 1992 and 1994, ending in her termination in May of 1994. Finally, it raises a preliminary legal issue, the arbitrability of statutory sex discrimination claims, not at all involved in *Contardo.*

Discrimination cases are fact-specific. The passage of time since the events at issue in *Contardo*—thirteen years, the different witness and decisionmakers in the *Contardo* case, the setting of the charges, the allegations themselves—divides it from the litigation before me. In effect, not only does Rosenberg's claim involve different legal issues, but it involves a different office and a very different era. No "reasonable person" would assume that every part of a company

---

**2.** Sexual harassment which had occurred in the beginning of Contardo's tenure, in the mid 1970s, when Contardo was the only woman stockbroker, was introduced to provide context to the constructive discharge allegation, and the basis for punitive damages.

looks and acts alike, that every office is the same, that a sex discrimination charge in one office thirteen years ago has any relationship to a charge in another, in a more recent time period, in a different setting, involving different individuals. No bias or prejudice should be inferred from my representation of Contardo in her suit against Merrill Lynch. I was a lawyer; I was not the client. And while I was a zealous advocate, I understood the difference between the two. Merrill Lynch's fears that my presence in this case will "look bad" is more than offset by these facts.

### B. *Bias in Fact*

■ 28 U.S.C. § 455(b)(1) *mandates* recusal where the presiding judge has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." This prong looks not to the "appearance of impartiality" but the reality of it—bias in fact. Recusal under this provision also asks whether "a reasonable person would be convinced the judge was biased." *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 718, 136 L.Ed.2d 637 (1997) (citations omitted). The bias or prejudice "must be grounded in some personal animus or malice that the judge harbors ... of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Id.* (quoting *United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir. 1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986)).

■ I harbor no such prejudice against Merrill Lynch. After a hearing on this motion, the Court gave Merrill Lynch an opportunity to develop specific facts that would show that any witnesses from the *Contardo* case will be involved in any way in this litigation, that any data from the *Contardo* case would be relevant to anyone's testimony in chief or cross examination. No such facts were offered. Had any such issues come to light, I would have found the defendant's motion far more persuasive. *See United States v. Alabama*, 828 F.2d 1532, 1543–46 (11th Cir.1987) (holding recusal mandatory under § 455(b)(1) where trial judge who had served as a state senator and private lawyer had actively participated in the very events and shaped the very facts that were in issue in the suit or involved himself in the disputed evidentiary facts of the case), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988).[3]

Indeed, courts have not inferred bias or prejudice even where a trial judge had a prior *lawyer-client* relationship with a particular party. *See Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1165–66 (5th Cir.1982) (holding recusal not required, though judge had previously represented one of the defendants; the relationship had terminated at least six years before and was "too remote and too innocuous to warrant disqualification"), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Darlington v. Studebaker–Packard Corp.*, 261 F.2d 903, 906 (7th Cir.) (recusal not warranted where trial judge had represented defendant in unrelated matters for a four to five year period three to four years earlier), *cert. denied,* 359 U.S. 992, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959); *Royal Air Maroc v. Servair, Inc.*, 603 F.Supp. 836, 842 (S.D.N.Y.1985) (prior representation by trial judge of defendant's parent corporation in unrelated matter twelve years earlier was not a basis for recusal); *cf. Jenkins v. Bordenkircher*, 611 F.2d 162, 165–67 (6th Cir.1979) (refusing to grant habeas relief where state court trial judge had previously served as district attorney

---

**3.** I have recently had the occasion to recuse myself from *United States v. Brooks*, Civ. Action No. 97–10186. *Brooks* involved a criminal prosecution for perjury before the Grand Jury investigating the murder of Susan Taraskiewicz. The case hinged on whether certain statements made by the defendant—concerning whether he had spoken to a given individual on the day of Ms. Taraskiewicz's murder—were true or false.

As a private lawyer, I had represented Ms. Taraskiewicz in connection with her sexual harassment charges against her employer. Some time later, she was found murdered. Since Ms. Taraskiewicz was the victim of the crime that the Grand Jury before which Mr. Brooks had appeared was investigating, and since my investigation of her civil charges could involve some of the same facts on which the criminal prosecution was based, I recused myself. Neither party had requested it.

and had prosecuted the defendant on unrelated charges), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798 (1980).

There are no specific facts which I could have gleaned from my representation of Contardo which are of relevance in this case—no "bias in fact." The issues, time period and settings involved are different—no "appearance of bias." In this context, Merrill Lynch's challenge is more like a generic across the board challenge, plainly disfavored in the case law, to a judge who, as a lawyer, represented a client, who was suing the same company before the Court, in a case based generally on the same statute (sex discrimination) or analogous ones (age discrimination).[4] Indeed, after the facts are carefully examined, Merrill Lynch's challenge comes perilously close—although, to be sure, not identical—to a challenge levelled against a distinguished judge, Judge Constance Baker Motley, who said: "The assertion, without more, that a judge who engaged in civil rights litigation and who happens to be of the same sex as a plaintiff in a suit alleging sex discrimination on the part of a law firm, is, therefore, so biased that he or she could not hear the case, comes nowhere near the standards required for recusal." *Blank v. Sullivan and Cromwell,* 418 F.Supp. 1, 4 (S.D.N.Y.1975) (Motley, J.).

## C. *The Timing of Merrill Lynch's Motion*

■ A party must file a motion for recusal as soon as it knows the facts which form the basis for the disqualification. *United States v. Kelly,* 519 F.Supp. 1029, 1050 (D.Mass. 1981). At oral argument, counsel for Merrill Lynch represented that it had not learned of the Court's role in the *Contardo* litigation until after it received on April 23, 1997 Order preliminarily denying its motion to arbitrate Rosenberg's claim.

While I do not doubt the sincerity of counsel's representations, *Contardo* can hardly have been a surprise to Merrill Lynch. First, Rosenberg cited the *Contardo* case in her original opposition to Merrill Lynch's motion to compel arbitration. In a section discussing the widespread bias in the securities industry, the plaintiff wrote:

> More than six (6) years ago a judge of this Court assessed $250,000 of punitive damages against this same defendant Merrill Lynch in order to deter the 'endemic and habitual discrimination against women by undisciplined discretionary decisions in workplaces dominated by men.' *Contardo v. Merrill, Lynch, Pierce, Fenner & Smith,* 753 F.Supp. 406, 412 (D.Mass.1990) (Skinner, J.).

(Pl. Opp. at 16–17). Second, the *Contardo* decision was published; the Court's name appeared on the first page. Finally, given the high amount of punitive damages assessed, it seems very unlikely that Merrill Lynch had forgotten about the decision.

In addition, the defendant filed the motion *after* the Court issued its discovery and amicus order—an order in which the Court refused to compel arbitration, the result sought by Merrill Lynch. This factor militates against recusal. "[A] litigant who is aware of a potential ground for recusal should not be permitted to 'sandbag' that ground, hoping for a satisfactory resolution, but retaining a ground of attack on the judge's rulings." *El Fenix de Puerto Rico v. The M/Y JOHAN-NY,* 36 F.3d 136, 141 n. 6 (1st Cir.1994) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane 7 *Federal Practice and Procedure* ¶ 63.07 (2d ed.1993)). The concern, in a word, is judge-shopping.

Congress explicitly cited this as a concern when it passed the recusal statute. "[E]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision." H.R.Rep. No. 93–1453 (1974), 1974 U.S.C.C.A.N. §§ 6351, 6355. Other judges have also highlighted the importance of this concern. *See In Re Letters Rogatory,* 661 F.Supp. 1168, 1172 (E.D.Mich.1987) (noting that § 455 is to be construed narrowly to prevent judge shopping); *Sollenbarger v. Mountain States Telephone and Telegraph,*

---

**4.** Merrill Lynch has not moved to recuse the Court in other cases involving it before this Court. *See, e.g., Green, et al v. Fund Asset Management, L.P., Merrill Lynch & Co., Inc, Merrill Lynch, Inc. Princeton Services, Inc., et al.,* Civ. Action No. 96–11276.

706 F.Supp. 776, 786 (D.N.M.1989) (granting motion to recuse, but noting that party had "chose[n] to litigate in this court until it found the atmosphere not to its liking"; prior ruling remained in place; court stated its intent to recommend sanctions if original ruling was later vacated).

I hasten to add that I do not find any bad faith on the defendant's part. Knowledge of my involvement in the *Contardo* case, however, was available to the defendant as early as December 1996, before the Court issued its ruling.

### III. *CONCLUSION*

For the foregoing reasons, the defendant's motion is **DENIED**.

**SO ORDERED.**