Sarah P. WESSMANN by Henry Robert
WESSMANN, Plaintiff,

v.

BOSTON SCHOOL COMMITTEE,
et al., Defendants.

Civ. Action No. 97–11923.

United States District Court,
D. Massachusetts.

Sept. 16, 1997.

Michael C. McLaughlin, Boston, MA, for Plaintiff.

Frances S. Cohen, Janet A. Viggiani, Hill & Barlow, Boston, MA, Merita A. Hopkins, City of Boston Law Dept., Boston, MA, Andres W. Lopez, Hill & Barlow, Boston, MA, Diane Dilanni, Boston School Dept., Legal Advisor, for Defendants.

E. Macey Russell, Peabody & Arnold, Boston, MA, Ozell Hudson, Jr., Lawyers' Committee for Civil Rights, Boston, MA, for Movants.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

### I. *INTRODUCTION*

The plaintiff Sarah Wessmann ("Wessmann") has filed a motion to recuse me from participating in the above litigation. She seeks my disqualification for two reasons: my former membership on the Board of the Lawyers Committee for Civil Rights of the Boston Bar Association ("the Lawyers Committee") and my representation of the Concerned Black Educators of Boston ("CBEB") in a prior case involving the desegregation of the Boston schools. *See, e.g., Morgan v. Burke*, 926 F.2d 86 (1st Cir.1991).

I find that the first argument has no merit. For all intents and purposes, it is nothing more than a challenge to my impartiality as a judge solely because I was a civil rights lawyer, affiliated with civil rights organizations and causes.

The second challenge, however, is different. Submissions by the City of Boston raise the possibility that I may confront disputed evidence in the *Wessmann* litigation with which I am personally familiar because of my prior representation of CBEB. The *Wessmann* case is still at a preliminary stage; I am bound to accept counsel's characterizations of what their defenses "may be," or where the litigation "may" lead. Accordingly, out of an abundance of caution, I will **ALLOW** plaintiff's motion.

The issues raised by these pleadings— when prior associations disqualify a judge and when they do not—are critical ones and deserve close attention. They are important for all judges to grapple with, and for all citizens to understand.

## II. *DISCUSSION*

■ Title 28 U.S.C. § 455 provides two relevant rules governing when a judge should recuse herself:

(a) in any proceeding in which her impartiality might reasonably be questioned . . .
(b) (1) Where she has . . . personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

The two prongs have been dubbed the "appearance of bias" (section 455(a)) and "bias in fact" (section 455(b)(1)).[1]

### A. *Lawyer's Committee*

■ Any judge should disqualify herself from any proceeding in which "her impartiality might reasonably be questioned." 28

U.S.C. § 455(a). The test is not whether anyone, with a modicum of knowledge about the case, the judge, or the situation, or having seen only television soundbites or news captions, "might" believe the judge to be partial. Rather, it is whether a reasonable person, knowing " 'all the circumstances, would harbor doubts about the judge's impartiality.' " *El Fenix de Puerto Rico v. The M/Y Johanny*, 36 F.3d 136, 140 (1st Cir.1994) (quoting *Home Placement Serv., Inc. v. Providence Journal Co.*, 739 F.2d 671, 675 (1st Cir.1984)).

■ The plaintiff claims that because I was on the Board of Directors of the Lawyer's Committee for Civil Rights of the Boston Bar Association, it is improper for me to hear an important civil rights case. My association with the Lawyer's Committee, she says, "links this Court to the organization's ideology." The issue was first raised when the Lawyer's Committee sought to represent the NAACP as an intervenor in this litigation. The plaintiff continues to press the issue even in the face of the Lawyer's Committee's intention to withdraw from any participation before me.

I was a member of the Lawyer's Committee for a number of years. I resigned prior to being sworn in as a judge. Others have travelled the same path, from that Committee to the bench. The Boston Bar Association has long regarded the work of the Lawyer's Committee as a public service, no less important than work for charitable organizations or law enforcement groups.

Former association with such an organization alone cannot and should not be seen as undermining one's neutrality as a judge. The Supreme Court has said as much on several occasions when they were applying to themselves the same standards of recusal mandated for district court judges.[2] The

---

1. 28 U.S.C. § 455 amended the disqualification statutes to abolish the "duty to sit" doctrine and place the judge under a self-enforced obligation to recuse herself if there would be a reasonable basis for doubting her impartiality. It did not otherwise overrule prior caselaw regarding the duty to recuse. *See Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1051–52 (5th Cir.1975).

2. In 1943, Chief Justice Stone testified before the Judiciary Committee that "it has always seemed to the Court that when a district court judge

could not sit in a case because of his previous association with it, or a circuit of appeals judge, it was out of manifest duty to take the same position." Hearings Before Committee on the Judiciary on H.R. 2808, 78th Cong., 1st Sess., 24 (1943), *quoted in Laird*, 409 U.S. at 830, 93 S.Ct. at 11. Justice Rehnquist quoted this view to help illuminate the Supreme Court tradition that guided him as late as 1972 *Id.* at 831, 93 S.Ct. at 11–12. In turn, Justice Rehnquist's memorandum in *Laird* has become a standard for recusal decisions of judges at all levels of the judicial

fact that a judge actively advocated a legal, constitutional or political policy or opinion before being a judge is not a bar to adjudicating a case that implicates that opinion or policy. *Laird v. Tatum,* 409 U.S. 824, 830, 93 S.Ct. 7, 11, 34 L.Ed.2d 50 (1972). Indeed, Supreme Court judges have refused to disqualify themselves from passing on legislation or regulations even when, as legislators, they were instrumental in drafting the law. Both Justices Black and Frankfurter participated in cases interpreting groundbreaking labor reform legislation that they had been instrumental in drafting. *Id.* at 831–32, 93 S.Ct. at 11–12. Similarly, Chief Justice Vinson sat in cases involving tax legislation that he had drafted as a member of Congress. *Id.* at 832, 93 S.Ct. at 12. Justice Jackson "participated in a case raising exactly the same issue that he had decided as Attorney General (in a way opposite to that in which the Court decided it)." *Id.* Chief Justice Hughes wrote the opinion overruling *Adkins v. Children's Hospital of D.C.,* 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923), in spite of having written a book that seriously criticized that decision. *Id.* at 833, 93 S.Ct. at 12–13.

More recently, then Justice Rehnquist explained why he would not recuse himself from a case about which he had written a memo and testified before Congress while still an employee of the Department of Justice:

> Since most Justices come to this bench no earlier than their middle years, it would be unusual if they had not by that time formulated at least some tentative notions that would influence them in their interpretation of the sweeping clauses of the Constitution.... It would be not merely unusual, but extraordinary, if they had not at least given opinions as to constitutional issues in their previous legal careers. Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualifica-

tion, not lack of bias. *Id.* at 835, 93 S.Ct. at 13–14.

*See also Mistretta v. United States,* 488 U.S. 361, 406–07, 109 S.Ct. 647, 673, 102 L.Ed.2d 714 (1989) ("That federal judges participate in the promulgation of Guidelines does not affect their or other judges' ability impartially to adjudicate sentencing issues.")

This Circuit has followed the Supreme Court's lead in declining to require recusal when a judge has helped to formulate policy or been associated with relevant, politically-charged issues. "Our judicial system would be paralyzed if judges were disqualified from deciding cases because of views about, or differences over, abstract policy issues." *Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 491 (1st Cir.1989) (holding judge's pro-statehood position was not a reason to recuse, though case involved issues of applicability of federal law to Puerto Rico and appellants opposed statehood); *see also United States v. Wright,* 873 F.2d at 447 (Breyer, J., concurring) (declining to recuse himself from a sentencing appeal because of his membership on the Sentencing Commission); *United States v. Jackson,* 30 F.3d at 206 (Pettine, J. concurring) (deciding not to recuse himself from sentencing appeals in spite of opposition to the Sentencing Guidelines). *Accord United States v. Norton,* 700 F.2d 1072, 1076 (6th Cir.1983), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983); *Rosquist v. Soo Line R.R.,* 692 F.2d 1107, 1112 (7th Cir.1982).

Civil rights and school desegregation have been major projects for the judges of this Court and for the federal judiciary for decades, as well as a central issue in contemporary American society. A number of judges who have confronted precisely the same issue that I face here have concluded that association with a public position on the issue of civil rights, and even representation of civil rights plaintiffs—without more—does not create a reasonable doubt about one's impartiality in future civil rights cases. *United States v.*

system. *See, e.g., United States v. Jackson,* 30 F.3d 199, 206 (1st Cir.1994) (Pettine, J. concurring); *Del Vecchio v. Illinois Dep't of Corrections,* 31 F.3d 1363, 1377 n. 3 (7th Cir.1994); *United States v. Payne,* 944 F.2d 1458, 1476 (9th Cir. 1991); *United States v. Wright,* 873 F.2d 437, 447

(1st Cir.1989); *Shaw v. Martin,* 733 F.2d 304, 316 (4th Cir.1984); *Anderson v. Dolce,* 653 F.Supp. 1556, 1568 (S.D.N.Y.1987); *Johnson–Allen v. Crown Leasing Corp.,* 68 B.R. 812, 816 (Bkrtcy.E.D.Pa.1987).

*Alabama*, 828 F.2d 1532, 1542–43 (11th Cir. 1987); *School Dist. v. State of Missouri*, 438 F.Supp. 830, 832 (W.D.Mo.1977); *Baskin v. Brown*, 174 F.2d 391, 394 (4th Cir.1949) (holding such positions "show[s] no personal bias on the part of the judge against any of the defendants, but, at most, zeal for upholding the rights of Negroes under the constitution and indignation that attempts should be made to deny them their rights. A judge cannot be disqualified because he believes in upholding the law, even though he says so with vehemence.").

To hold otherwise would be to embrace "a myopic vision of the judge's role, a vision that required judges to refrain from participating in their churches, in their non-political community affairs, in their universities." *Pennsylvania v. Local 542, Int'l Union of Operating Engineers*, 388 F.Supp. 155, 181 (E.D.Pa. 1974).

I decline to adopt such a restricted view of the judicial role. As Judge Higginbotham wrote in denying a motion to recuse on the basis of his alleged "role as ... [an] active supporter of the advancement of causes of integration": "of course, I do have feelings that this nation must fulfill its commitment to equal justice under the law. I do not apologize for these feelings ..." *Pennsylvania v. Local 542*, 388 F.Supp. at 157, 181.

I agree.

### B. *Morgan v. Burke*

■ The plaintiff's second argument, however, raises a far narrower and more serious issue: my participation as an attorney in an earlier case involving the desegregation of the Boston schools and the possibility that it would implicate the statutory prohibition against a judge hearing a case in which she has "personal knowledge of disputed facts." 28 U.S.C. § 455(b).

Let me be clear: This ground for disqualification is narrow. It is not that I advocated a legal position in another case that is implicated in this litigation. Nor is it that I once represented a party adverse to the present defendant. *See United States v. Hurst*, 951 F.2d 1490, 1503 (6th Cir.1991), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1952, 118 L.Ed.2d 556 (1992); *Cipollone v. Liggett Group, Inc.*, 802 F.2d 658, 659 (3d Cir.1986); *United States v.*

*Alabama*, 828 F.2d at 1544 (finding that judge should have recused himself because his involvement in the issues "went beyond the mere making of public statements"); *School Dist. of Kansas City, Missouri*, 438 F.Supp. at 832 ("stating that it was irrational to believe that my impartiality might reasonably be questioned ... by the fact that I advised, counseled, and represented the School District ... over fifteen years ago").

In *Rosenberg v. Merrill Lynch*, 976 F.Supp. 84 (D.Mass.1997), I did not recuse myself where I had represented a party who had sued Merrill Lynch some time before and where there was no evidentiary connection between the earlier litigation and the case before me. Unlike the defendant in *Rosenberg*, the defendants here have indicated a direct relationship between the earlier case and the *Wessmann* matter. The School Committee will argue that the injunction issued by Judge Garrity in the *Morgan* litigation imposes a "continuing obligation to prevent resegregation of the exam schools" on the School Committee. In addition, the City "may" argue that the current admissions policy is justified by the "remediation of the lingering effects of discrimination." Given the scope of the defendants' "possible" arguments, this litigation may involve additional fact finding, expert testimony, and ultimately, disputed facts. Most significantly, these disputed facts may include evidence of a key issue in *Morgan*: the deleterious effects of a racial imbalance in the Boston Schools' teaching staff on minority student performance.

It is not merely that the defendants will be making an analogous argument to one that I made as counsel during my representation of CBEB—that Judge Garrity's findings justified the faculty hiring orders of the Court. If that were all that is at stake in this case—arguments I made as counsel representing a litigant not involved in this case—*I would not recuse myself from this matter.*

The danger here is that the litigation may involve disputed facts with which I may have personal knowledge by virtue of my prior representation.

I represented the CBEB from 1981 to 1991. CBEB was an intervenor in the litigation, only at the remedy stage, after Judge

Garrity had made his findings in the initial case. Discovery was largely over; the trial had ended. Nevertheless, I cannot be certain that something I learned from that representation—in a submission to the parties, in an interview with a witness, by reviewing an exhibit—will not be a disputed fact in this case.

It would be a tragedy for all concerned if that issue arose mid-litigation after resources have been expended and considerable time taken. *See United States v. Alabama,* 828 F.2d at 1545 (holding that the trial judge should have recused himself where he not only had "extrajudicial personal knowledge" of the state school system's past history of discrimination but also had shaped the composition of one of the institutions appearing before him as a party); *Cf. Laird,* 409 U.S. at 826–27, 93 S.Ct. at 9–10 (denying any personal knowledge of the relevant facts); *Cf. School Dist.,* 438 F.Supp. at 834 ("I have assured counsel repeatedly that I would recuse myself immediately should my personal knowledge of facts ever become relevant.").

Time is of the essence to both parties to this dispute; the plaintiff in particular will benefit from the speedy adjudication of her claim. Given the importance of this litigation not only to the parties but also to the future of the Boston schools, the hazard of proceeding to trial only to subsequently rediscover some personal knowledge of relevant disputed facts is too great a risk to take.

### III. *CONCLUSION*

For the foregoing reasons, the plaintiff's motion is

**ALLOWED.**

**SO ORDERED.**