**UNITED STATES of America, Appellee,**

v.

**Gordon S. MIRKIN, Defendant-Appellant.**

**No. 80–1442.**

United States Court of Appeals,
First Circuit.

Argued April 8, 1981.

Decided May 27, 1981.

---

Albert F. Cullen, Jr., Boston, Mass., with whom Cullen & Wall, Boston, Mass., was on brief, for defendant-appellant.

Elliot D. Lobel, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by defendant Gordon S. Mirkin from the district court's denial of his motion for a new trial based on an allegation of juror misconduct. There are two issues: whether the trial judge should have recused himself from hearing and deciding the motion, and whether he conducted a proper investigation of the claim of juror misconduct.

A full exposition of the facts relative to the motion for a new trial is necessary. Defendant is a lawyer. After a jury trial on June 10 and 11, 1980, he was found guilty of three counts of income tax evasion. On June 13 defendant filed a motion for a new trial and a supporting affidavit alleging misconduct by one juror. The affidavit can be summarized as follows: On the day after the trial, Mirkin, his wife, and his lawyer went over the jury list, presumably for the first time, because Mirkin's wife felt that any jurors from the vicinity of Marblehead, Massachusetts, might have known of Mirkin's suspension from the practice of law, which took effect prior to his trial. Upon learning that juror number 10 was Mrs. Anne Doctoroff, Mirkin ascertained that her husband was an attorney, Isadore Doctoroff. He then recalled that he had represented the husband-libelee and Doctoroff had represented the wife-libelant in a divorce case, *Foresta v. Foresta*, in 1970 and that his relationship with Doctoroff had been "especially acrimonious." On one occasion during the divorce proceedings, defendant telephoned Doctoroff at his home and "was having a heated conversation with him when his wife, Anne Doctoroff, the said juror got on the phone and told me that her husband was not a young man and not in the best of health and cannot take this business and hung up the telephone." The final paragraph of the affidavit stated that, "[a]lthough said juror knew me and had in the past expressed animosity toward me, she failed to bring that information to the attention of the court, despite the court's inquiry."

An affidavit was also filed by Joan Cronkhite; she had been named as correspondent in the divorce case. Her affidavit stated that the phone call described by Mirkin was made from her home and that, after Mirkin hung up, she asked what the conversation was all about. He replied "that he had not only talked with Mr. Doctoroff, but also . . . [Doctoroff's] wife and

that both were extremely angry about his call and that Mrs. Doctoroff had told him not to bother her husband again."

The district court ordered that a hearing on the motion for new trial be held on June 25, ordered all pertinent material impounded, and directed counsel for both parties and defendant to refrain from communicating with the persons referred to in the affidavits pending a determination of the motion.

The following testimony was elicited at the hearing, which was held over a three-day period. The implicated juror, Mrs. Doctoroff, who was sixty-seven years old and recently discharged from the hospital, stated that she did not remember the divorce case, did not remember any telephone call, did not think that she would break in on a telephone call to her husband, and had no knowledge of the defendant prior to the trial.[1]

At the time of the hearing, Mr. Doctoroff had been practicing law for over forty-six years and was semi-retired. He testified that he had never done much divorce work. Doctoroff did not recognize the defendant when he was pointed out to him at the hearing. He testified that his wife did not discuss the defendant's criminal case with him, because of the court's instruction not to do so, and did not tell him the name of the defendant. He did not at first remember the divorce case. When shown a letter of August 18, 1970, bearing his signature and addressed to Mirkin, Doctoroff vaguely recalled that he was counsel initially for the libellant in the divorce action; however, he had no recollection of the grounds for the case or of any details concerning the action. Under questioning by defense counsel, Doctoroff stated that the name of defendant did not mean anything to him, reiterated that he did not remember the telephone call, and denied that it took place. Court records adduced at the hearing showed that he had withdrawn from the case after three months.

Defendant's testimony substantiated and fleshed out his affidavit. He also testified to an acrimonious exchange between himself and Doctoroff prior to a preliminary support hearing at "the lowest level of the Middlesex Probate Court." Mirkin told of the troubles he had because of the conduct of Doctoroff's client, Mrs. Foresta. According to defendant, Mrs. Foresta went to the office of Dr. Cronkhite, husband of the corespondent, Joan Cronkhite, "and ranted and raved and embarrassed him terribly." He also testified that Mrs. Foresta made telephone calls to Mrs. Cronkhite that upset her and her children. Defendant characterized the divorce case as "wild" and "bizarre" and attributed this to the conduct of Mrs. Foresta. He felt that Doctoroff was remiss in not controlling the behavior of his client. Mirkin was concerned about the effect of Mrs. Foresta's behavior on his client, her husband, who was undergoing treatment for diabetes at the time.

Joan Cronkhite testified that she recommended to Mr. Foresta that defendant represent him in the divorce proceedings his wife had instituted. The rest of her testimony was the same as in her affidavit.

The last witness was Mrs. Foresta. She testified that Doctoroff had represented her for about three months, after which time he was "fired" because her father did not think he was "strong" enough to handle the case. Mrs. Foresta did not remember making any phone calls to Mrs. Cronkhite and denied going to Dr. Cronkhite's office.

At the conclusion of the hearing, defense counsel moved that the judge recuse himself on the grounds that he had failed to follow the standards set forth in *United States v. Doe*, 513 F.2d 709 (1st Cir. 1975), and had "already made a prior determination with respect to this motion." The motion for recusal was denied.

Counsel were then given an opportunity to argue the motion for a new trial. After argument was concluded, the court denied

---

1. We note that prior to trial, the district court asked the potential jurors whether they knew the defendant, or knew of anything that would prejudice them against him. Mrs. Doctoroff remained silent.

the motion for a new trial with a full explication of his reasons. The court stated:

Coming to the credibility of Mr. Mirkin, I simply do not believe him. In my opinion—and, of course, judgments as to credibility are matters of opinion, and my opinion can conceivably be incorrect in this respect, and yet the issue here has been framed by his lawyer as one of credibility—in my opinion, he sought to convert the coincidence of his having had a divorce case in which Mr. Doctoroff was on the other side of the case into a basis for fabricating bias on the part of a juror in his case.

My reference to the case—And incidentally, in forming my opinion as to the credibility of Mr. Mirkin, I do attach some significance to the jury's having rejected testimony which he gave during the trial, which in my opinion—and again, it is just a question of opinion—was contrary to common sense and contrary to the credible testimony of the person, a certified public accountant, to whom he sought to point the finger, or on whom he sought to pin the blame for his substantial evasions of federal income tax.

So that it is true that the jury did disbelieve Mr. Mirkin when he testified at the trial. That was the issue that was presented to the jury by counsel in the case: Whom do you believe, Meiselman or Mirkin? So that the jury's verdict, which, I might say, coincided with the Court's appraisal of the respective credibility of Mr. Mirkin and Mr. Meiselman, has been a factor, although not a major factor, in the Court's discounting the believability of Mr. Mirkin, who is, in my view, making a last-ditch effort to blame his difficulties on other persons: Meiselman in the criminal case, Doctoroff in this motion for a new trial.

The Court's low opinion of the credibility of Mr. Mirkin is also due in some measure, although again, not in principal part, to the inconsistencies between his testimony and the testimony of the last witness, Mrs. Foresta.

■ We turn first to the recusal issue. Mirkin argues that, because the trial judge formed an adverse opinion as to his credibility during the trial, the judge became prejudiced against him and was, therefore, unable to hear and decide the new trial motion fairly and impartially. The judicial disqualification statute, 28 U.S.C. § 455, provides in pertinent part:

§ 455. *Disqualification of justice, judge, or magistrate*

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

Under the pertinent provisions of the statute, there are two grounds for disqualification: if the judge's impartiality might reasonably be questioned, or if he has a personal bias or prejudice concerning a party. In ruling on a motion for disqualification brought under 28 U.S.C. § 144,[2] which has the same "personal bias or prejudice" language as 28 U.S.C. § 455(b)(1), the Supreme Court said "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *Berger v. United States*, 255 U.S. 22, 31 [41 S.Ct. 230, 232, 65 L.Ed. 481]." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). There is no claim here of prejudice stemming from an extrajudicial source, so our inquiry is limited to § 455(a), wheth-

---

**2.** 28 U.S.C. § 144 provides in pertinent part:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

er the judge's impartiality might reasonably be questioned.[2]

We set forth the test for determining impartiality in *United States v. Cowden*, 545 F.2d 257 (1st Cir. 1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977):

> The proper test, it has been held, is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*Id.* at 265. Making credibility assessments is daily grist for a trial judge. In any case or proceeding in which the defendant testifies, the judge, almost as a reflex process, will form an opinion about the defendant's credibility. Such determination should not, of course, be based on bias or prejudice, but prejudice does not inevitably arise as a result of forming a credibility opinion. A judge often must make a finding about the defendant's credibility in a pretrial suppression hearing, but, to our knowledge, no court has held that this, without more, disqualified him from presiding at the trial. *See United States v. Archbold-Newball*, 554 F.2d 665, 681–82 (5th Cir.), *cert. denied*, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977). In *United States v. Cepeda Penes*, 577 F.2d 754, 756–58 (1st Cir. 1978), we found that the refusal of the trial judge to accept a plea of *nolo contendere* unless he was satisfied that the defendant was guilty, was not reasonable grounds for recusal. We have rebuffed challenges to a judge's impartiality grounded on rulings and findings made in prior proceedings involving the same parties. *United States v. Parrilla Bonilla*, 626 F.2d 177 (1st Cir. 1980); *Blizard v. Frechette*, 601 F.2d 1217 (1st Cir. 1979). Taken to its logical extreme, acceptance of defendant's contention would mean that in any motion for a new trial in which defendant's credibility was an issue and the judge had an opportunity to make a credibility assessment during the trial, the judge would have to recuse himself because he would be prejudiced one way or the other. We have been unable to find any case, and defendant has cited none, even remotely suggesting that this is or should be the law.

It is anomalous that the judge's frank comments here have been used for a claim of lack of impartiality. He could have decided the question of misconduct on the basis of the juror's testimony alone. Her testimony that she had no memory of the telephone call and did not know the defendant is believable, especially when her age, her physical condition, and the ten-year lapse of time between the divorce case and defendant's trial are taken into consideration. Defendant's testimony did not and could not contradict her testimony; the judge did not have to choose between two conflicting statements. Although the judge's comments as to defendant's credibility might have been unnecessary, we think he is to be commended for putting on the record fully and completely the reasons for his ruling. "We expect candid findings and rulings from district judges." *United States v. Parrilla Bonilla*, 626 F.2d at 181.

We find nothing in the judge's comments or conduct of the hearing that would give rise to a doubt about his impartiality in the mind of a reasonable person. To the contrary, we think his conduct of the hearing and full statement of the reasons for his ruling bespeak only patience and fairness.

■ The second issue, whether the district judge conducted a proper investigation of the claim of juror misconduct, is also devoid of merit. "A district court has broad, though not unlimited, discretion to determine the nature and extent of its inquiry into allegations of jury bias." *United States v. Corbin*, 590 F.2d 398, 400 (1st Cir. 1979). The first thing a judge has to do when faced with a claim of juror misconduct is to " 'conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred.' " *United States v. Doe*, 513 F.2d at 711–12 (quoting *United States v. McKinney*, 429 F.2d 1019, 1026 (5th Cir. 1970)).

Here, all of the persons who could shed any light on the alleged juror misconduct were interrogated by the judge, and counsel were either invited to suggest questions or allowed to examine the witnesses directly. The questioning spanned a period of three days. Defendant asserts that this was not a full investigation because a voir dire of all the jurors was not conducted. This assumes that Mrs. Doctoroff lied in her testimony, did know the defendant, bore him ill will, and expressed her feelings to the other jurors. In the light of the extremely tenuous basis for such an assumption, there was no reason for questioning the other jurors— indeed the facts adduced at the hearing negated the need for such procedure. We find that the trial judge conducted a full and fair investigation of the juror misconduct charge. There was certainly no abuse of discretion.

Finally, we cannot refrain from observing that the usual time for counsel and client to go over the list of jurors is before they are selected. Failure to do so here is inexplicable, especially given the caliber of defense counsel and the fact that defendant himself was an attorney.[3]

*Affirmed.*

---

**3.** We note for the record that Mr. Mirkin's attorney on this appeal did not serve as his trial counsel.