HOME PLACEMENT SERVICE, INC.,
et al., Plaintiffs, Appellants,

v.

PROVIDENCE JOURNAL COMPANY,
Defendant, Appellee.

HOME PLACEMENT SERVICE, INC.,
et al., Plaintiffs, Appellees,

v.

PROVIDENCE JOURNAL COMPANY,
Defendant, Appellant.

Nos. 83–1923, 84–1096.

United States Court of Appeals,
First Circuit.

Argued May 10, 1984.

Decided July 11, 1984.

As Amended on Denial of Rehearing
Aug. 28, 1984.

**672**

Ralph J. Gonnella, Providence, R.I., with whom Ralph J. Gonnella, Ltd. Providence, R.I., was on brief, for Home Placement Service, Inc., et al.

Joseph V. Cavanagh, Jr., Providence, R.I., with whom Edward F. Hindle, Knight Edwards, and Edwards & Angell, Providence, R.I., were on brief, for Providence Journal Company.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This action was brought pursuant to sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. Plaintiffs-appellants, Home Placement Service, Inc., et al. (Home Placement) appeal the district court judgment on three grounds: the judge's refusal to recuse himself; the award of only nominal damages against defendant-appellee, The Providence Journal Company (Providence Journal); and the allegedly erroneous calculation of appellants' attorney's fees.

This case has followed an unusual and rather tortuous procedural path. Home Placement's antitrust suit was based on the allegations that the Providence Journal monopolized the Rhode Island rental advertisement market and by refusing to accept classified rental referral advertisements from Home Placement violated sections 1 and 2 of the Sherman Act. Home Placement sought injunctive relief, damages and attorney's fees.

Prior to the start of trial on December 23, 1980, the parties stipulated that the record, including the evidentiary objections, in a factually similar case, *Homefinders of America, Inc. v. Providence Journal Company*, would be made part of the record in this case.[1] *Homefinders* was tried by the same attorneys before the same district judge (Boyle, J.) who initially heard the instant case. In *Homefinders* the court found no violation of the Sherman Act and dismissed the case. We affirmed, holding that the newspaper, regardless of whether it was a monopoly, had a first amendment right and reasonable business justification for refusing to accept deceptive advertisements. *Homefinders of America, Inc. v. Providence Journal Co.*, 621 F.2d 441, 444 (1st Cir.1980).

After hearing, the court dismissed the action in this case, holding that, "plaintiff's new evidence is a distinction without a difference .... The respective schemes of Homefinders and Homeplacement [sic] are,

---

1. The stipulation provided:

The parties in the above-captioned matter hereby agree that the plaintiffs' claim for trial by jury is waived and that the case will proceed for trial before Judge Boyle, sitting without a jury. The parties further agree that the full record in the case of *Homefinders of America, Inc. v. Providence Journal Company*, et al (C.A. No. 5133) will be included as part of the record in the above-captioned matter, subject to objections to the admissability [sic] of evidence already in the record.

for purposes of this proceeding, indistinguishable." On appeal, we reversed holding that the *Home Placement* advertisements, unlike those in *Homefinders*, were not deceptive and that plaintiffs had proven a violation of sections 1 and 2 of the Sherman Act.[2] We remanded "to determine the appropriate form of injunctive relief, if any is needed, and the amount owing in damages and attorney's fees." *Home Placement Service, Inc. v. The Providence Journal Company*, 682 F.2d 274, 281 (1st Cir. 1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983).

Another judge (Selya, J.) handled the case on remand, 573 F.Supp. 1423. He ruled that he would determine damages on the basis of the record in *Homefinders* and that there would be no new trial on the question of damages.

Plaintiffs then filed a motion in the court of appeals asking for clarification of our remand order. We responded as follows:

1. The district court was entirely correct in observing that we did not order a new trial.

2. The court was essentially correct in considering plaintiffs "waived" any damage evidence that could reasonably have been discovered and was not offered. Basically plaintiffs must stand on the record.

3. Plaintiffs, however, could not be regarded as waiving evidence only thereafter available, and since the delay was occasioned by defendant, plaintiffs should be the ones to benefit, if there be such.

Nothing herein shall prevent the court from requiring any such new evidence to be presented by offer of proof, deposition, etc., as it may determine.

After our clarification issued, the district court requested and received an offer of proof from plaintiffs on after-acquired evidence. It rendered an opinion on October 27, 1983, holding that an injunction should issue and that there was insufficient evidence to support plaintiffs' damages claim. It also requested a fee application from plaintiffs within twenty days. On November 10, injunctive relief was ordered. The court, on the same day, awarded plaintiffs nominal treble damages in the amount of three dollars. Plaintiffs promptly appealed the damages award. Neither party has appealed the injunction.

Objections were made by defendant to plaintiff's fee application and hearings were held on December 6 and 21, 1983. The court awarded plaintiffs $36,575 in attorney's fees by order dated December 22.

RECUSAL

On December 19, 1983, prior to the final hearing and award on attorney's fees, plaintiffs filed a motion for recusal of Judge Selya and for leave to conduct discovery in furtherance of the motion. An affidavit of one of the plaintiffs, Joseph P. Muschiano, accompanied the recusal motion. It averred that a complimentary article about Judge Selya was published in defendant's newspaper, *The Providence Journal*, on November 13, 1983. The affidavit quoted from the article that Judge Selya "was active in Republican politics, serving several times as John Chaffee's [sic] campaign manager." John Chafee is, and has been for a number of years, a United States Senator from Rhode Island. A copy of the newspaper article was appended to the affidavit. The core of the affidavit stated:

The attached article was apparently researched and written while plaintiff's case was still *sub judice* before the Court on the questions of injunctive relief and damages. Additionally, the Court still has before it the question of attorney's fees and costs.

As revealed by the article, his Honor was formerly campaign manager for Senator John H. Chaffee. Upon information and belief John H. Chaffee:

---

**2.** Two members of the panel had sat on *Homefinders* and the writing judge was the same in

both cases.

(a) Was responsible for the appointment of his Honor to the bench. ·

(b) Was a former partner in the law firm of Edwards & Angell, the firm representing the Defendant, Journal in this case.

(c) Is a cousin of William Chaffee, a director and shareholder of the Defendant, Journal.

The above facts, in combination, make it appear that the Defendant, Journal, was and is currying special favor from the Court by taking advantage of prior personal relationships with Senator Chaffee and by preparing and publishing an article that is most complimentary to his Honor while this matter was still sub judice before the Court. I personally question whether these facts and factors infected the Court's decision in this case and whether the Court has or can remain impartial herein.

At the December 21 hearing on attorney's fees, Judge Selya, after a discussion on the record, denied the recusal motion because "I believe that this record is totally devoid of any facts which would constitute any type of minimally arguable factual basis on which an objective and reasonable man could doubt on the basis of what has been proffered by these plaintiffs the impartiality or fairness of this Court."

Although the motion itself does not specify its statutory basis, a memorandum of the plaintiffs filed along with the motion refers to 28 U.S.C. § 455(a) which provides: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

We have construed 28 U.S.C. § 455(a) as follows:

In essence, section 455(a) allows a judge to disqualify himself if a reasonable man would have factual grounds to doubt the impartiality of the court. Such a standard allows recusal when objective appearances provide a factual basis to doubt impartiality, even though the judge himself may subjectively be confident of his ability to be evenhanded. *Blizard v. Frechette*, 601 F.2d 1217, 1220 (1st Cir.1979). *See also, United States v. Kelley*, 712 F.2d 884, 890 (1st Cir.1983); *In re United States*, 666 F.2d 690, 695 (1st Cir.1981); *Brody v. President & Fellows of Harvard College*, 664 F.2d 10, 11 (1st Cir. 1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982); *United States v. Mirkin*, 649 F.2d 78, 81 (1st Cir.1981); *United States v. Parrilla Bonilla*, 626 F.2d 177, 179 (1st Cir.1980); *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir.1976). Other circuits have also· interpreted 28 U.S.C. § 455(a) as establishing an objective-reasonable person standard. *See United States v. Nelson*, 718 F.2d 315, 321 (9th Cir.1983); *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir.1983); *United States v. Norton*, 700 F.2d 1072, 1076 (6th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983); *United States v. Miranne*, 688 F.2d 980, 985 (5th Cir.1982), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 736, 74 L.Ed.2d 959 (1983); *United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir. 1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982); *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101· S.Ct. 78, 66 L.Ed.2d 22 (1980).

We have further· ruled that there must be some reasonable factual basis to doubt the impartiality of the judge and that our review is limited to determining whether the trial judge abused his discretion in evaluating the recusal evidence. *United States v. Parrilla Bonilla*, 626 F.2d at 179; *Blizard v. Frechette*, 601 F.2d at 1221.

We now turn to what triggered the recusal motion, the newspaper article.[3] The article which covered an entire page focused on the Judge's home which had been built by a Philadelphia architect in 1929 and acquired by Judge Selya and his wife in 1977. The article quoted an architectural

---

**3.** In the affidavit the affiant stated that he had urged his counsel to seek recusal of Judge Selya prior to publication of the article based solely on the Journal's and the Judge's relationship with Senator Chafee, but that his counsel had dissuaded him from so doing.

historian from Brown University as saying that the house was "a bit of old Philadelphia on the East Side of Providence, pretty, elegant even witty ...." In addition to a detailed description of the house, the article also contained a capsulized summary of the career highlights of the Judge's wife. The article noted briefly that the Judge had enjoyed a successful law practice, and was active in Republican politics, serving several times as Senator Chafee's campaign manager, before being appointed to the federal bench. Five photos accompanied the article, one of which showed the judge and his wife seated in the living room. Although the house is the focus of the article, the article is also a tribute to the discernment and good taste of the Judge and his wife in acquiring and tastefully refurbishing an architectural gem. It is clear that the article was written after a visit by a reporter and photographer to the Judge's home.

At the hearing on the recusal motion, Judge Selya stated that he felt proud and privileged to have a close personal relationship with Senator Chafee for twenty-years, which was a matter of common and public knowledge. He pointed out that the Senator had been a partner in the law firm representing the defendant between 1973 and 1975, but there was no suggestion or intimation in the motion that the Senator had any continuing interest or participation in the firm. Judge Selya emphasized that the case was brought after Senator Chafee's election to the United States Senate and subsequent to the severance of his relationship with the law firm representing the defendant.

Judge Selya then stated that he had never met William Chafee, alleged in the affidavit to be a cousin of Senator Chafee and a director and shareholder of the defendant's newspaper, and had no knowledge of Mr. Chafee's responsibilities and ownership interest in the Providence Journal.

The third matter discussed was the newspaper article. Judge Selya stated that two or three years prior to this, when he was a practicing attorney, he had received a request by the Providence Journal to go through his house and write a story about it. The request was rejected because he felt it would intrude on his privacy. The request was renewed after the Judge went on the bench and was granted because "I felt that I had given up a large measure of my privacy, that I was not in a position to deny it." Judge Selya then went on to state that the interview in his home, which took place on November 5, was conducted by a reporter, Donald D. Breed, who was an old friend from college days. There is nothing in the record indicating when the newspaper contacted the judge to make arrangements for the interview.

■ We have no hesitancy in ruling that Judge Selya's relationship with Senator Chafee, the Senator's past connection with the defendant's law firm, and the fact that a cousin of the Senator may be a stockholder and director of the defendant's newspaper are not grounds for recusal under section 455(a). It is common knowledge, or at least public knowledge, that the first step to the federal bench for most judges is either a history of active partisan politics or strong political connections or, as in the case of Judge Selya, both. "All judges come to the bench with a background of experiences, associations and viewpoints. This background alone is seldom sufficient in itself to provide a reasonable basis for recusal." *Brody v. President & Fellows of Harvard College*, 664 F.2d at 11. The tenuous link between Senator Chafee and the defendant through his cousin, totally unknown to Judge Selya, would not raise even an eyebrow of the reasonable person objectively assessing the Judge's impartiality. Nor does the Senator's past connection with defendant's law firm cast the slightest doubt on Judge Selya's ability to act fairly in the case.

■ The newspaper article, however, is different and its impact must be assessed separately from the Judge's relationship with Senator Chafee, although both are lumped together in the recusal motion. Our analysis must be made within the

framework of its appearance to the reasonable person. As the Third Circuit put it:

> Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street. Use of the word "might" in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality.

*Potashnick v. Port City Const. Co.,* 609 F.2d at 1111 (citation omitted).

It is clear from reading the article that a reporter and photographer from the defendant's newspaper visited the Judge's home, and there is no question that the home interview took place during the period when the Judge was in the decision-making process of a case in which the newspaper that published the article was the defendant. It is not the complimentary tone of the article that gives pause for concern so much as its setting and timing. Although we are sure Judge Selya did not realize it, he had, in effect, invited one of the parties in a case to his home during the trial of that case. This would, we think, be bound to raise a serious doubt of the court's impartiality in the mind of a reasonable person. This is not the case of an unsolicited complimentary newspaper article over which the judge has no control as in *Shultz v. Newsweek, Inc.,* 668 F.2d 911 (6th Cir.1982). In *Schultz,* a newspaper had publicly supported the appointment of a district court judge to the circuit court.

In upholding the refusal of the judge to recuse herself in a libel case against the newspaper, the court noted that "[o]ne of the functions of a newspaper is to comment on matters such as appointments to public office." *Id.* at 919. We think there is a great difference between unsolicited newspapers' comments attacking or praising a judge and an article based on an interview at a judge's home with an employee of one of the parties to a case that the judge then has under consideration. That the reporter who conducted the interview was an old friend of the Judge only adds to the appearance of partiality. No reason was given, nor is there any apparent, why the interview and article could not have been postponed until after the case had run its course.

The only case we have found on point is *Spires v. Hearst Corp.,* 420 F.Supp. 304 (C.D.Calif.1976). In *Spires,* one of the defendant's newspapers ran a complimentary article about the district judge focusing on his skiing ability and his nomination to the United States Ski Hall of Fame by a reporter for the defendant. In his opinion, Judge Hauk stated that he did not have any personal bias on prejudice for or against any of the parties in the case. The judge felt, however, that his impartiality might reasonably be questioned and disqualified himself under 28 U.S.C. § 144,[4] 28 U.S.C. § 455(a) and Canon 3 C of the Code of Judicial Conduct.[5]

We have no doubt that Judge Selya decided the issues on this case impartially, but in light of the facts that the newspaper was a party to the case, that the judge was fully aware of this at the time the reporter was invited to his home, and that at the

**4.** 28 U.S.C. § 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days

before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

**5.** 28 U.S.C. § 455(a) has in all material respects been enacted as Canon 3 C of the Code of Judicial Conduct.

time of the interview the judge was in the process of deciding important issues in the case we are compelled to find that factual grounds existed for a reasonable person to doubt his impartiality. We think that in evaluating the impact of the newspaper article Judge Selya allowed the speciousness of the charges relative to his relationship with Senator Chafee to cloud an objective assessment of the import of the article in defendant's newspaper. We find that recusal was required under 28 U.S.C. § 455(a). This requires a remand for a determination by another judge of the amount of attorney's fees.

■ The determination of the amount of attorney's fees, however, involves a question of law that we think appropriate to decide at this time. Plaintiff contends that there should be included in the attorney's fees to which it is entitled a sum for the work done by its attorney in developing the liability record in the *Homefinders* case. Home Placement argues that because the policy and purpose of the antitrust attorney statute is to make the plaintiff completely whole and impose a penalty against the offender, it should recover attorney's fees for all the work that went into proving that defendant violated the antitrust laws.

We reject emphatically this add-on-fee request for two reasons. First, we point out that contrary to plaintiff's assertion in its brief, *Homefinders* was *not a companion case* to this one. It was a prior case that defendant won. It is obvious that the main reasons for the stipulated record were to save time for the court and expense for the parties. We are sure that defendant would not have agreed to make plaintiff's presentation of its proof easier in this case if it had known that it might have to pay the fees for the losing attorney in the prior case.

Our second reason for rejecting plaintiff's attempt to enhance its recovery is more basic. Time, skill, and experience are the lawyer's stock-in-trade. As an attorney gains in experience and skill, with experience honing skill, his or her services become more valuable and the hourly rate increases. Thus, the experience and skill acquired in trying cases in prior years adds to a lawyer's fee for cases tried in later years. That, however, is entirely different from adding directly on to the fees in one case a charge for time spent in a prior case. We rule that in computing attorney's fees in this case no charge can be made for developing the record in *Homefinders*.

DAMAGES

Appellants raise three issues on the question of damages: (1) whether they were entitled as a matter of law to a new trial on damages after remand; (2) did defendant waive its right to contest the legal sufficiency of plaintiff's "yardstick" evidence; and (3) was plaintiff's "yardstick" evidence inadequate as a matter of law for lack of sufficient comparability.

*Remand-New Trial*

■ Plaintiffs ask us to reconsider our clarification order which stated in essence that we did not order a new trial on damages, that plaintiffs "waived" any damage evidence that was not part of the stipulated record, and that plaintiffs had not waived any evidence that only became available after the record stipulation. This order became the law of the case. We are not any more impressed now than we were at the time of the clarification order with the argument that a combination of factors required a new trial on damages as a matter of law, even though we had not ordered one. Nor does the new contention of plaintiffs, that Federal Rule of Civil Procedure 63 requires a new trial, impress us. The rule simply does not apply to this situation.[6] Plaintiffs voluntarily entered into a

---

6. Fed.R.Civ.P. 63 provides:

If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial

stipulation as to what would constitute the evidence in this case for purposes of determining damages. We must assume not only that they knew what they were doing, but that they had a reason for doing it. Stipulations entered into betwen experienced and able counsel, such as we have here, are not to be shrugged off lightly. Moreover, even if the rule could nullify the stipulation, which we think it could not, a new trial is not mandatory under the rule; it is left up to the discretion of the successor judge. We rule, as a matter of law, that under the unique circumstances of this case, there would be no abuse of discretion in not granting a new trial on damages.

*Waiver By Defendant*

■ Plaintiffs argue that defendant waived its right to contest the legal adequacy[7] of plaintiffs' yardstick evidence. As we understand it, their argument runs as follows. The stipulated record from the *Homefinders* case contained evidence that compared a rental referral firm operating in Nashville, Tennessee, to such a firm operating in the State of Rhode Island. Although it had objected to the admission of such evidence on the stipulated record, the defendant did not question the legal sufficiency of the comparability data evidence until after our remand. This was too late. Defendant had waived its right to contest the legal sufficiency of this evidence and the district court was compelled to consider it in determining damages.

We do not agree. We turn to the stipulated record. When the comparability evidence was first offered, defense counsel stated:

MR. EDWARDS: I do not think that the numbers in those exhibits establish the basis for the comparison. Even if the comparison as counsel represents in Nashville was somewhat similar to Providence, I don't think that's relevant on the issue of damages. I think Providence is relevant on the issue of Providence; that

the fact further statistics assert numbers from federal publications show comprability [sic] on the numbers doesn't take into account all sorts of other factors that enter into the market. Nashville just isn't Providence.

This was clearly a challenge to the legal sufficiency of the evidence, even though the words "adequate" or "sufficient" were not used, as well as an objection on the grounds of relevancy. Defense counsel continued to object to the comparison evidence as the testimony of the expert witness proceeded. At the conclusion of the expert's testimony, plaintiffs' counsel moved for the introduction of the documents containing the comparison data. Defense counsel objected as follows: "We now renew our objection on the grounds that Nashville as the basis for comparison has not been appropriately established." This can only mean that the legal sufficiency of the evidence was being questioned. Even if defendant's objections are rigidly construed to have been based solely on relevancy, the line between legal sufficiency and relevancy is indistinguishable in the context of this case. We find on the basis of the stipulated record that defendant did not waive its right to question the legal sufficiency of the comparability evidence on remand.

There are other factors that militate against plaintiffs' attempt to have us rule that defendant conceded the entire issue of damages. Plaintiffs, either artfully or mistakenly, confuse the admissibility of evidence with its legal sufficiency. Evidence may be admissible, but may later be found in the context of the entire case to be legally insufficient. In the prior case (*Homefinders*) the question of damages was never reached. Defendant, therefore, never had reason to challenge its legal sufficiency in the framework of the case as a whole. This is quite different from objecting to its admissibility on the grounds of legal insufficiency. It is not unusual for a court to admit evidence and then at the

---

or for any other reason, he may in his discretion grant a new trial.

7. In their brief, plaintiffs use the words "adequacy" and "sufficiency" interchangeably. We consider them to be synonymous in the context of this case, but prefer the word "sufficiency."

conclusion of the evidence rule that it is legally insufficient. We do not think that defendant can be foreclosed from challenging the legal sufficiency of the yardstick evidence because its objection to its admission may have been semantically defective and, since there was no need to, did not question its legal sufficiency after its admission.

 The third issue, whether such evidence was sufficient as a matter of law, should, we think, be decided by the district court in the first instance. Damages, particularly in an antitrust case, is a mixed question of fact and law. The considered judgment of a trial judge in analyzing the evidence is always helpful to an appellate court. Since there has to be a remand, we think it preferable for the district court to first decide the legal sufficiency question and then, if necessary, determine the amount of damages, if any. Such determination will be made solely on the basis of the *Homefinders* record, and any after-acquired evidence that the court shall deem admissible and defendants shall have the right to contest the legal sufficiency of the yardstick evidence.

*Affirmed in part, reversed in part. Remanded for further proceedings consistent herewith.*

### ORDER OF COURT

We do not understand appellants' statement that our resolution of the recusal issue did not explicitly state that a reversal and remand as to both attorney's fees and damages were required. On page 677, we stated: "We find that recusal was required under 28 U.S.C., Sec. 455(a). This requires a remand for a determination by another judge of the amount of attorney's fees." We then went on to rule as a matter of law that the add-on-fee request of the plaintiff was rejected. On page 679, we stated: "Since there has to be a remand, we think it preferable for the district court to first decide the legal sufficiency question and then, if necessary, determine the amount of damages."

In its petition, appellants further state that, if taken literally, the remand language can be interpreted "to exclude the testimony and evidence that was introduced at the Home Placement trial and the after-acquired evidence permitted by this court's clarification order." Our reading of the record and Judge Selya's opinion is to the effect that the district court requested and received an offer of proof from plaintiffs on after-acquired evidence. See page 673. There is nothing in the record to indicate that testimony and evidence was actually introduced at the Home Placement trial. In order to clarify any misunderstanding, the final sentence of the opinion shall be rewritten as follows: "Such determination will be made solely on the basis of the Homefinders record and any after-acquired evidence that the court shall deem admissible, and defendants shall have the right to contest the legal sufficiency of the yardstick evidence."

We reaffirm our ruling that Federal Rule of Civil Procedure 63 does not apply.