**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lloyd Ray BRADSHAW,
Defendant-Appellant.**

No. 84–2504.

United States Court of Appeals,
Tenth Circuit.

March 27, 1986.

See also 767 F.2d 699.

---

Kenneth R. Brown, Salt Lake City, Utah, for defendant-appellant.

Richard N.W. Lambert, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., with him on brief), Dist. of Utah, Salt Lake City, Utah, for plaintiff-appellee.

Before McKAY, SETH and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Lloyd Ray Bradshaw appeals his conviction of three counts of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314 (1982), and one count of conspiracy, in violation of 18 U.S.C. § 371 (1982).

Appellant first contends that the trial court erred by not conducting a more extensive inquiry into allegations of juror bias. The misadventure that gave rise to this issue began when defense counsel, armed with the names of the government's witnesses, failed to request any voir dire questions concerning juror acquaintance with those witnesses. On the second day of trial, one of the government's witnesses approached the prosecutor and informed him that he and another government witness were acquainted with juror number eight. The prosecutor promptly relayed this information to defense counsel who, in turn, informed the court:

> [DEFENSE COUNSEL]: It's come to my attention that one of the jurors who is seated has a relationship with at least the witness that is presently testifying. And [the prosecutor] indicates that that same relationship exists for another witness.... It's my understanding from talking to [the prosecutor] that that relationship is a friendly relationship, and I have some grave concerns about the propriety of continuing the case with that particular juror.

Record, vol. 4, at 106. The court responded by saying:

> THE COURT: Well, I haven't yet talked to that juror. Ordinarily if I feel like if it's a problem that would bear upon fairness and objectivity, I would make some effort to make inquiry. But I think what I'll do here is to let the matter ride for a while and see what kind of a record we have.

*Id.* At the conclusion of the government's case-in-chief, defense counsel reminded the court about juror number eight's acquaintanceship with the two government witnesses and requested that juror number eight be dismissed on grounds of bias. Defense counsel said at this time: "It's my understanding that juror number eight has reported both to the court as well as [the government witness], having reported to the government who reported it to us that [the government witness] and juror num-

ber eight have in fact had business dealings." Record, vol. 6, at 794. The court did not confirm or deny that juror number eight had contacted the court but stated in response:

Well you've called my attention to the fact that there may be some acquaintanceship, and as yet we haven't formally explored the consequence of that. The court intends to let the matter go forward and at an appropriate time the court will talk with the juror involved. Fortunately we do have a spare, and we'll be in a position to make a value judgment as to whether we need to use the spare or not. I don't know that you need to formally do anything because you've formally done it before and it was called to the court's attention and I haven't forgotten about it.

*Id.*

Later in the trial, juror number four wished to be excused from the trial because of a family emergency. The court convened a conference in chambers and informed defense counsel that it intended to use the alternate juror to replace juror number four unless defense counsel produced an affidavit or something more specific concerning juror number eight's relationship with the two government witnesses. Although one of the defense attorneys said that he "would just as soon have [juror number eight] replaced," record, vol. 6, at 981, none of the attorneys responded to the court's invitation to come forward with an affidavit. When the prosecutor suggested that the court should conduct an in camera hearing, the court responded with obvious irritation:

Well, you, sir, bring to my attention in written form and affidavit form the material that you're suggesting here, I'll be glad to look at it. I'm getting tired of people making essentially suggestions and admonitions and observations that are generally couched, that have nothing whatsoever to do with specific instances. If you have something specific to call to my attention, not just your evaluation, but something specific, by all means call it to my attention. All we've done in this

lawsuit is talk around and around and around and around. I'm tired of that. If you've got something specific, state it. State it in writing. Bring it to my attention, any of you. If you've got something specific, state it. State it in writing. State it in a form that I can rely upon. I want to get this lawsuit tried and I want to get it tried and finished, and I want you to sit down and think through your questions.

Record, vol. 6, at 983.

Before excusing juror number four, the court stated its understanding that none of the attorneys objected to juror number four being excused and replaced with the alternate juror. When asked if the court's understanding was correct, the three defense attorneys and the prosecutor replied:

[DEFENSE COUNSEL]: On my part, that's correct, yes.

[DEFENSE COUNSEL FOR MR. BRADSHAW]: Reluctantly so, yes, your Honor.

[DEFENSE COUNSEL]: As much as we'd like to have her, we certainly would not object.

\*        \*        \*        \*        \*        \*

[PROSECUTOR]: If defense counsel has no objection, then the government has none.

Record, vol. 6, at 1035–36.

There is no further reference to juror number eight in the record; nor has appellant made any reference to juror number eight in his post-trial motions.

■ Against the backdrop of this record, appellant urges us to adopt a rule requiring automatic reversal if the trial court fails to conduct an evidentiary hearing whenever there is a suggestion of possible juror bias arising after the commencement of the trial. Appellant relies primarily on a Fifth Circuit case involving juror misconduct. *United States v. McKinney,* 429 F.2d 1019 (5th Cir.), *modified and reversed on rehearing,* 434 F.2d 831 (5th Cir.1970), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). The Fifth Circuit, in

the first *McKinney* decision, adopted a *per se* rule requiring the trial court to conduct an evidentiary hearing in response to allegations of juror misconduct:

> [W]hen jury misconduct is alleged in the defendant's motion for new trial, the trial judge has a duty to take the following actions: he must conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred; if it occurred, he must determine whether or not it was prejudicial; unless he concludes that it was clearly not prejudicial, he must grant the motion for new trial; if he concludes that it did not occur or that it was clearly not prejudicial, he must spell out his findings with adequate specificity for meaningful appellate review.

*Id.* at 1026.

In urging this court to follow *McKinney*, appellant overlooks the fact that *McKinney* was modified and reversed on rehearing.[1] *United States v. McKinney*, 434 F.2d 831 (5th Cir.1970). In *United States v. Martinez*, 604 F.2d 361 (5th Cir.1979), *cert. denied*, 444 U.S. 1034 (1980), the court observed that the *per se* rule announced in *McKinney* had never been adopted in the Fifth Circuit and that subsequent Fifth Circuit decisions have consistently emphasized the trial court's discretion in deciding how to respond to allegations of juror misconduct or bias. *Id.* at 364. *E.g., United States v. Herring*, 568 F.2d 1099, 1104–06, 1105 n. 16 (5th Cir.1978); *United States v. Chiantese*, 546 F.2d 135, 138 (5th Cir.), *modified and remanded*, 560 F.2d 1244 (5th Cir.1977) (en banc), *modified*, 582 F.2d 974, 980 (5th Cir.1978), *cert. denied, sub nom. Cerrella v. United States*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979); *United States v. Khoury*, 539 F.2d 441, 443 (5th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). *But see United States v. Brown*, 548 F.2d 1194, 1219 n. 15 (5th Cir.1977) (Gee, J., dissenting); *United States v. Betner*, 489 F.2d 116, 119 (5th Cir.1974) (written by Judge Rives, author of the second *McKinney* opinion, with no mention that *McKinney* was reversed on rehearing).

The Ninth Circuit has also declined to adopt the *McKinney* "full investigation" rule. In *United States v. Hendrix*, 549 F.2d 1225, 1227–28 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 493, 54 L.Ed.2d 321 (1977), the court said:

> An important part of the district judge's broad discretion centers on his response to allegations of juror bias or misconduct. For example, it is within the trial court's discretion to determine whether and when to hold an evidentiary hearing on such allegations. If the judge orders an investigative hearing, it is within his discretion to determine its extent and nature. *See United States v. Doe, su-*

---

1. Other circuits have cited *McKinney* with approval without recognizing that the decision was reversed on rehearing. *United States v. Brantley*, 733 F.2d 1429, 1439 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1367, 84 L.Ed.2d 383 (1985); *United States v. Kelly*, 722 F.2d 873, 881 (1st Cir.1983), *cert. denied*, 465 U.S. 1070, 104 S.Ct. 1425, 79 L.Ed.2d 749 (1984); *United States v. Mirkin*, 649 F.2d 78, 82 (1st Cir. 1981); *United States v. Doe*, 513 F.2d 709, 711–12 (1st Cir.1975). Although the First Circuit quoted *McKinney* with approval in *United States v. Doe*, 513 F.2d at 711–12, it emphasized that the trial court has discretion "to determine the extent and type of investigation" that is appropriate. *Id.* at 712. Subsequent First Circuit cases have adhered to the view that the trial court has broad discretion to determine the nature and extent of its inquiry into allegations of juror bias. *United States v. Kelly, supra; United States v. Mirkin, supra; United States v. Corbin*,

590 F.2d 398, 400 (1st Cir.1979). In *United States v. Brantley, supra*, at 1439, the Eleventh Circuit stated that, when confronted with allegations of juror misconduct, "the trial judge 'must conduct a *full investigation* to ascertain whether the alleged jury misconduct actually occurred; if it occurred, he must determine whether or not it was prejudicial.'" (quoting *United States v. McKinney*, 429 F.2d 1019, 1026 (5th Cir. 1970)). The *Brantley* court acknowledged that the trial court has some discretion in determining the appropriate procedure to be used, but suggested in a footnote that, at a minimum, the trial court has a duty to question every juror about the alleged misconduct or outside influence. *Brantley*, 733 F.2d at 1440 n. 20. To the extent that *Brantley* might be read as depriving the trial court of its discretion to determine how to proceed in response to allegations of juror bias, we decline to follow it.

*pra,* 513 F.2d at 712; *Tillman v,. United States, supra,* 406 F.2d at 938. [Footnote omitted.] As a matter of common sense, a trial judge in making these decisions will necessarily be directed by the content of the allegations, including the seriousness of the alleged misconduct or bias, and the credibility of the source. *See United States v. McKinney,* 429 F.2d 1019, 1031 (5th Cir.1970) (Godbold, J., dissenting), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). [Footnote omitted.]

We cited *Hendrix* with approval in *United States v. Jones,* 707 F.2d 1169 (10th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983):

A trial court has a great responsibility and wide discretion in dealing with a motion for a new trial based on allegations of juror misconduct. *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977); *Woodring v. United States,* 376 F.2d 619, 623 (10th Cir.), *cert. denied,* 389 U.S. 885, 88 S.Ct. 153, 19 L.Ed.2d 182 (1967). The trial judge's response to such a motion must be guided by the content of the allegations, including the seriousness and likelihood of the alleged bias, and the credibility of the source. *See Hendrix,* 549 F.2d at 1227–28. The appropriate inquiry in this case is whether either actual bias existed or " 'whether the circumstances ... compel an imputation of inherent bias to the juror as a matter of law.' " *Williams v. United States,* 418 F.2d 372, 377 (10th Cir.1969) (quoting *Brown v. United States,* 356 F.2d 230, 233 (10th Cir.1966)). Something more than an unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown. *United States v. Barber,* 668 F.2d 778, 787 (4th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982). And even where juror bias is shown, not every incident requires a new trial. " 'The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.' " *Hendrix,* 549 F.2d at 1229 (quoting *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.)), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). The trial court's decision will be upheld unless it is an abuse of discretion. *Id.*

*Id.* at 1173.

■ We adhere to the view expressed by the Ninth Circuit in *Hendrix.* In responding to allegations of juror bias that arise during a trial, the trial court's decision as to how to proceed will not be reversed except for an abuse of discretion. However, "[w]hen a party's suggestion that a jury is biased is not frivolous, the district court ordinarily should undertake an adequate inquiry into the questions of whether the bias actually existed and whether it was prejudicial." *United States v. Ramsey,* 726 F.2d 601, 604 (10th Cir.1984).

■ In this case, the court knew that a juror had prior business dealings with key government witnesses; however, there was no showing of actual bias. While knowledge of this information would have required further inquiry by the court or counsel during voir dire, it certainly does not "compel an imputation of inherent bias to the juror as a matter of law." *Jones, supra,* at 1173 (quoting *Williams v. United States,* 418 F.2d 372, 377 (10th Cir.1969)). Nor is there any allegation of misconduct on the part of juror number eight, such as an intentional concealment of his acquaintance with the two government witnesses. In the absence of a showing which, on its face, would disqualify juror number eight, the court acted properly in taking into account not only the failure of counsel timely to request that jurors be queried about their possible relationships with government witnesses, but also the failure of counsel to provide an affidavit detailing the extent of juror number eight's acquaintance with the two government witnesses. Although it would have been improper for defense counsel to solicit this information from juror number eight, there was nothing to prevent defense counsel from ac-

quiring this information from either of the two government witnesses.

We recognize that at an early stage in the proceedings, the trial court informed defense counsel that it was not necessary for him to do anything further with regard to the allegation of juror bias. However, once the circumstances changed and the court made clear that it was insisting on more than "unverified conjecture," counsel's reliance on the court's earlier statement was no longer justified. At that time, defense counsel could have come forward with more specific information or requested additional time to meet the court's demand. Having failed to do so, appellant should not be heard to complain on appeal.

Disruptive consequences to the trial of criminal cases are suggested by permitting defense counsel to come forth after conviction and successfully contend that, notwithstanding the absence of actual bias, and notwithstanding his own failure sufficiently to pursue voir dire inquiry to expose possible predilections on the part of the prospective juror, that nevertheless probable prejudice must be imputed to the juror as a matter of law and a new trial thereafter granted. "A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict." *Spivey v. United States*, 5 Cir., 109 F.2d 181, 186, *cert. denied* 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401.

*Brown v. United States*, 356 F.2d 230, 233 (10th Cir.1966).

We believe the trial court was justified in requiring defense counsel to produce more specific information before disrupting the jury by singling out juror number eight for further inquiry. While the court's irritation with the length of the trial may well have put defense counsel in a difficult position, the court made clear that it required something specific before it would inquire further. Yet, defense counsel produced nothing. In these circumstances, we conclude that the district court did not abuse its discretion.

Appellant next contends that the trial court erred when it denied his motion for new trial on the basis of affidavits alone without conducting an evidentiary hearing. Appellant's motion for new trial was based on newly discovered evidence in the form of alleged perjury committed by Mark Cargill, a codefendant who testified against appellant at trial. Defense counsel executed an affidavit in connection with the motion for new trial, relating to a conversation between defense counsel and appellant's brother, Floyd Bradshaw, who was also a codefendant. According to the affidavit, Mr. Bradshaw had told defense counsel that, while he and Mr. Cargill were in prison in Arizona after appellant's trial, Mr. Cargill had told him that he had testified falsely about appellant's involvement in the theft ring which formed the basis for the indictment. In response to appellant's motion for new trial, the prosecutor submitted a counteraffidavit, stating that he had spoken with Mr. Cargill and that he denied having recanted his trial testimony.

In this circuit, a defendant seeking a new trial on the basis of newly discovered evidence must establish the following:

The newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such as would probably produce an acquittal; and a new trial is not warranted by evidence which, with reasonable diligence, could have been discovered and produced at trial.

*United States v. Allen*, 554 F.2d 398, 403 (10th Cir.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977). When the motion is based on recanted testimony, the trial court must first be satisfied that the challenged testimony was actually false. *See United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir.1984).

Relying on *United States v. Ramsey, supra*, appellant argues that the trial court was required to conduct an evidentiary hearing before deciding that Mr. Cargill's trial testimony was not false. In

*Ramsey,* the defendant filed a motion for new trial, supported by a principal government witness's affidavit recanting his trial testimony. This affidavit was corroborated by another affidavit executed by the government witness's wife. The trial court denied the defendant's motion for new trial without a hearing and without making findings of fact. Because we could not determine from the record the court's reasons for denying the motion for new trial, we remanded the case to the district court.

This case is unlike *Ramsey* in a very important respect. In *Ramsey,* the witness himself executed an affidavit recanting his trial testimony. Here, Mr. Cargill has never stated under oath that his trial testimony was false. Instead, appellant's motion for new trial was based on an affidavit of counsel which contained nothing more reliable than double hearsay obtained from appellant's own brother. After considering the conflicting affidavits of counsel, and the absence of a recanting affidavit from Mr. Cargill himself, the trial court refused to conduct a hearing and denied the motion for new trial. In those circumstances, the trial court acted within its discretion.

■ Appellant also asserts that the trial court erred when it refused to grant appellant's motion for continuance. During the government's case-in-chief, Mr. Cargill testified that, on or about June 19, 1983, appellant had flown by commercial airline from Denver, Colorado, to Salt Lake City, Utah. Defense counsel promptly filed a motion for continuance so that he could obtain airline records to impeach Mr. Cargill's testimony. Apellant argues that the district court's refusal to grant his motion for continuance deprived him of his Sixth Amendment right to confront witnesses against him.

The trial court has broad discretion in determining whether to grant a motion for continuance. *Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). The trial court's decision should be guided by the nature of the action, the diligence of the party requesting the continuance, the conduct of the opposing party, the effect of the continuance, and the asserted need for the continuance. *United States v. Lee,* 729 F.2d 1142, 1144 (8th Cir.1984).

■ Defense counsel's affidavit filed in connection with appellant's motion for continuance stated that it would have taken at least two weeks for appellant to acquire the airline records. In addition, the affidavit suggests that appellant was not even sure whether the records could be obtained. Furthermore, even if appellant could have obtained the records, their usefulness would have been limited to impeaching Mr. Cargill on a collateral matter. The trial court did not abuse its discretion in denying the motion for continuance.

Appellant's final contention is that the trial court erred by allowing the government to present evidence concerning a trip that appellant made to Las Vegas in February 1984. Appellant argues that other evidence established that the conspiracy had ended approximately six months earlier and that he was unfairly prejudiced by the evidence concerning the February 1984 trip.

■ The indictment alleged a conspiracy beginning in 1979 and continuing until July 31, 1984. The February 1984 trip was alleged as an overt act in furtherance of the conspiracy. Record, vol. 1, at 26. The government may offer proof of overt acts alleged in the indictment so long as they were committed in furtherance of the conspiracy. Although one government witness testified on cross-examination that the conspiracy ended in August or September 1983, record, vol. 4 at 225, the evidence was sufficient to support a finding that the conspiracy had not yet ended when appellant made the trip to Las Vegas in February 1984. Thus, there was no error in admitting evidence concerning this overt act.

For the foregoing reasons, we affirm the conviction.